## Henry P. PORRETTO, Jr. and Rosemarie Porretto, Appellants,

v.

## Jerry PATTERSON, Commissioner of the Texas General Land Office, Texas General Land Office, Lou Muller, Executive Director of the Park Board of Trustees of the City of Galveston, Texas, and the Park Board of Trustees of the City of Galveston, Texas, Appellees.

No. 01–05–00942–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 2007.

Rehearing Overruled Feb. 19, 2008.

J. Brett Busby, Mayer, Brown, Rowe, & Maw, LLP, Houston, TX, for Appellants.

Charles Paul Dunkel Jr., Mills Shirley, Molly Baer Holub, Carla Cotropia, Mills Shirley, LLP, Houston, George W. Vie III, Mills Shirley, LLP, Galveston, Greg Abbott, Office of the Attorney General, Gen. Litigation Div., Liz Bills, Natural Resources Division, Austin, for Appellees.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION

JANE BLAND, Justice.

About twenty-seven acres of waterfront property, gulfward of the seawall on Galveston Island, present the basis for this dispute. Henry and Rosemarie Porretto sued the Texas General Land Office (the GLO), and its commissioner, Jerry Patterson, together with the Galveston Park Board, and its executive director, Lou Miller, alleging that the defendants have interfered with their fee simple ownership of the property and taken it without compensation. The trial court dismissed the case on the defendants' pleas to the jurisdiction, in which they asserted governmental immunity.

The Porrettos appeal, contending (1) the facts alleged support a takings claim, for which no immunity exists, (2) although immunity bars an action for trespass to try title as to the State, the Porrettos nevertheless can sue Patterson and Miller, (3) an interim settlement agreement executed by the Porrettos, the GLO, and the Park Board, and filed with the trial court, is enforceable, and (4) section 306.041(a) of the Local Government Code waives any governmental immunity. We conclude that the Porrettos' takings claim is not barred by governmental immunity, and we follow Texas Supreme Court precedent allowing suit against the officials. We further conclude that the Local Government Code does not otherwise waive governmental immunity, and thus governmental immunity bars the Porrettos' claim for slander of title. Finally, we conclude that the Porrettos' breach of settlement agreement claim may proceed only insofar as it relates to claims against which no governmental immunity lies in the first instance. We therefore affirm in part and reverse and remand in part.

## Background

There being no reporter's record or trial court findings, we recite the facts from the Porrettos' petition, which we accept as true at this stage of the proceedings.[1] The Porretto family purchased fee simple title in the disputed property beginning in the late 1950's. For more than 40 years, the family earned income from the property with rental concessions for beach amenities, like umbrellas, chairs, floats, and boats. As landowners, the Porrettos continuously have paid property taxes, maintained liability insurance, and constructed and maintained fixtures and improvements

1. *See City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 308 (Tex.App.- Houston [1st Dist.] 2001, pet. denied).

on the property. Among the fixtures is a $50,000 ramp that provides public and emergency vehicle access from Seawall Boulevard to the beach.

According to the Porrettos' petition, in recent years, the defendants wrongfully have occupied, used, and interfered with the Porrettos' use of their property. In addition, the Porrettos claim a cloud on the title to the land. The Porrettos point to three leases, attached as exhibits to their petition. First, in October 1994, the State, through the GLO, leased the property to the City of Galveston for the purpose of beach replenishment. Second, in December 1994, the State, through the GLO, leased the property to the City of Galveston for the purpose of public recreational use, and placed the leases under Park Board Management. Third, in November 1999, the City of Galveston, by and through the Park Board, leased a portion of the disputed property to Paul Roure and Virginia Nagra for the purpose of providing beach concessions. According to the Porrettos, these leases recite that the State and Galveston County own the land south of the seawall, without acknowledgment of the Porrettos' land. In July 2001, the Porrettos entered an agreement to sell their property to Southbrook Investments, Inc. for 7.5 million dollars. Southbrook later cancelled the contract, citing a cloud on the Porrettos' title caused by the three government leases.

In their petition, the Porrettos seek (1) a declaratory judgment against all defendants that they have "no right of ownership of any nature as to the Property[,]" (2) to quiet title, via a trespass to try title claim against Patterson and Miller, (3)

compensation for a taking of their land, as the Fifth Amendment and Article 1, section 17 of the Texas Constitution afford, and (4) damages for slander of title. In addition, while this litigation was pending in the trial court, the Porrettos and the defendants participated in a mediation, reached a settlement agreement, and filed it with the trial court. Their agreement foundered in its execution. The Porrettos amended their petition to include a breach of contract claim based on the defendants' alleged failure to comply with the terms of the settlement.

In response to the suit, the defendants answered, and filed pleas to the jurisdiction based on the doctrine of governmental immunity. The defendants did not offer evidence in support of their plea, nor did they dispute the Porrettos' evidence of ownership of the tracts in question or the veracity of the lease agreements attached to the Porrettos' petition.[2] The trial court granted the jurisdictional pleas.

### Standard and Scope of Review

▬▬▬ Subject-matter jurisdiction is essential for a court to have the authority to resolve a case, and a trial court lacks jurisdiction over a governmental unit that is immune from suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (1993). A party may challenge a court's subject-matter jurisdiction by filing a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999). We review de novo a trial court's ruling on a jurisdictional plea. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In our review,

---

**2.** The lease agreements refer to "state owned submerged land," which may form the basis for an assertion of title by the State. *See City of Galveston v. Texas Gen. Land Office*, 196 S.W.3d 218, 220 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). But nothing in the record so indicates. The GLO did not, for example,

assert in its plea that the disputed land is state owned, nor did it attempt to prove that the State owns the land in question, either by title or by natural beach erosion. In the briefing on the plea, the State refers to an assertion that it has title, but it never so asserted in its answer, or in its plea.

we do not examine the underlying merit of the plaintiff's case, but consider only the plaintiff's pleadings and evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002).

 A plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect apparent from the face of the pleadings, making it impossible for any amendment of the plaintiff's petition to confer jurisdiction on the trial court. *Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 438, 331 S.W.2d 910, 917 (1960).

### The Takings Claim

 The Porrettos contend the trial court erred in dismissing their constitutional takings claim. They observe that this case has two aspects: allegations that the government is "using" or "taking" their property, which support their claim for inverse condemnation, and allegations that governmental officials are wrongfully claiming title their land, for which long-standing Texas Supreme Court precedent allows a suit to proceed. The defendants respond that the Porrettos improperly have recast a trespass to try title claim against the State as a takings claim, the former a claim for which they must obtain legislative consent to sue, and thus the Porrettos allege no claim that survives a jurisdictional plea.

 The Fifth Amendment grants a landowner the right to seek compensation from the government for land that it takes: "[N]or shall private property be taken for public use, without just compensation."

U.S. CONST. amend. V. Likewise, the Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. Thus, while sovereign immunity protects the State from lawsuits for monetary damages, it "offers no shield against a taking claim brought under Article I, section 17 of the Texas Constitution." *Kenedy Mem'l Found. v. Mauro*, 921 S.W.2d 278, 282 (Tex.App.-Corpus Christi 1995, writ denied); *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001) (sovereign immunity does not shield State from action for compensation under takings clause). Rather, "[t]he Constitution itself is ... a waiver of governmental immunity for the taking, damaging or destruction of property for public use." *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980). "A physical taking may occur when the government physically appropriates or invades private property, or unreasonably interferes with the landowner's right to use and enjoy it." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). If the government uses private property without first paying for it, an owner may recover damages for inverse condemnation. *Id.* (holding that evidence was legally sufficient to support finding that government reservoir caused recurrent destructive flooding directly impacting ranch land); *see also Texas Parks & Wildlife Dept. v. Callaway*, 971 S.W.2d 145, 149 (Tex.App.-Austin 1998, no pet.) (action for inverse condemnation is exception to doctrine of sovereign immunity).

 In contrast, a trespass to try title action against the State requires legislative consent. *State v. Lain*, 162 Tex. 549, 552, 349 S.W.2d 579, 582 (1961) ("When in this state the sovereign is made

a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained in limine"). Texas courts have repeatedly held that a trespass to try title action is the proper method of adjudicating rival claims to real property. *Martin v. Amerman*, 133 S.W.3d 262, 264 (Tex.2004) (holding that trespass to try title is "*the* method for determining title to ... real property."); *Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex.1994); *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex.1983). It is this line which the government contends supports its plea to the jurisdiction.

▮▮▮ With respect to the Porrettos' takings claim, we disagree with the government—a takings claim is not a functional equivalent of a trespass to try title claim or a suit to quiet title. In a trespass to try title or to quiet title action, an owner sues to recover immediate possession of land unlawfully withheld. *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n.r.e.) (noting that a trespass to try title suit affords a legal remedy by statute and a suit to quiet title affords an equitable remedy, but both are actions to recover possession of land unlawfully withheld). A prevailing party's remedy is title to, and possession of, the real property interest at issue in the suit. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 449 (Tex.App.-Austin 2006, pet. denied).

▮▮▮ On the other hand, a takings claim is one in which a landowner alleges that the government has taken his property for public use without permission, for which he seeks compensation. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971). The available remedy is a key distinction between the two. While one suit quiets title and possession of the property, *see Florey*, 212 S.W.3d at 449, the other allows only for just compensation

for the property taken or used—the prevailing party does not regain use of land lost to the public's use, or win possession of it. *See Hallco Tex., Inc. v. McMullen Co.*, 221 S.W.3d 50, 56 (Tex.2007). And, although land ownership is universally an underlying consideration of a takings claim, legislative consent is unnecessary to pursue just compensation (as opposed to possession and title) because the Texas and United States Constitutions already grant private landowners such a right. As the Texas Supreme Court has observed, if the government could claim immunity for a taking by simply asserting title, then it need never legally condemn land—it "could simply appropriate it, and the landowner would be entitled to no compensation unless the Legislature granted him permission to sue." *Griffin v. Hawn*, 161 Tex. 422, 426, 341 S.W.2d 151, 153 (1960).

In support of their position, the defendants rely upon *Bell v. State Department of Highways and Public Transportation*, 945 S.W.2d 292, 293 (Tex.App.-Houston [1st Dist.] 1997, pet. denied) and *Texas Southern University v. State Street Bank and Trust Company*, 212 S.W.3d 893, 911 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). In *Bell*, a landowner filed a declaratory judgment action, seeking title to property upon which the State had built a highway. The State claimed title to the property by a lost deed and adverse possession. *Id.* This Court held that Bell's suit was, in effect, a trespass to try title action against the state. *Id.* at 294. The landowner in *Bell*, however, did not seek compensation for an inverse condemnation, but instead sought title to the land. *Id.* Thus, our court's holding in that case is distinguishable.

In *Texas Southern*, a bank sued the university for inverse condemnation after the university refused to pay for equipment provided to it under a lease/purchase

agreement. 212 S.W.3d at 898–99. Our court affirmed the trial court's denial of the university's plea to the jurisdiction in part, but concluded that the bank's claim for inverse condemnation was properly dismissed because the university took the property under color of contract, as conceded by the parties in their pleadings. *Id.* at 911. In contrast to *Texas Southern,* in which the parties conceded the existence of a contract by which the university took possession of the equipment, here, the Porrettos' claim of ownership in the land is unchallenged in the pleadings and the evidence. *Id.*

Instead, the facts in this case resemble those in *State v. Riemer* and *Kenedy Memorial Foundation v. Mauro,* cases in which takings claims survived a plea to the jurisdiction. *See State v. Riemer,* 94 S.W.3d 103, 109 (Tex.App.-Amarillo 2002, no pet.) (holding that allegations that State's lease and actions that resulted in taking of oil and gas were sufficient to state claim for inverse condemnation); *see also Kenedy Mem'l Found.,* 921 S.W.2d at 282 (holding that inverse condemnation claim survived jurisdictional plea where foundation alleged that state mineral leases encroached on foundation's property).

Finally, the defendants respond that the Porrettos' takings claim must be dismissed for lack of jurisdiction because they had no intent to take the Porrettos' land, but rather only to assert the government's "rights." But the government offered no evidence on the issue of ownership or title, or even a colorable assertion of ownership in the land; therefore, we must accept the Porrettos' allegation that they are the fee simple owners of the land as true for purposes of evaluating this appeal. Viewed, as we must, in a light favorable to conferring jurisdiction, an allegation that the government conveyed leasehold rights to a third party on land that the Porrettos' own is not an allegation of accidental or unintended use of land; rather, it is an allegation of an intentional act that interferes with the vested right of a landowner. *See Riemer,* 94 S.W.3d at 109; *see also Gragg,* 151 S.W.3d at 554 (affirming inverse condemnation judgment against government where landowner proved taking was not unintended).[3]

At this stage of the proceedings, the government did not controvert the Porrettos' allegations of ownership of the land in question, and have challenged the Porrettos' claims without regard to the truth of their claim of ownership.[4] It is true that, to prove their takings claim, the Porrettos necessarily will have to prove that they own the property that the State allegedly has taken or used. If the Porrettos prove that they own the disputed property, and that it has been "taken" by the State, the Porrettos can recover compensation—but

---

3. The Park Board observes in its post-submission briefing that it at least leased the property to a third party in reliance on its lease with the GLO, and thus it acted under color of contract. *See State v. Holland,* 221 S.W.3d 639, 644 (Tex.2007). Unlike the facts in *Holland,* where the State produced uncontroverted evidence that it accepted benefits pursuant to contractual arrangements with third parties, the allegation here is that the government in effect contracted with itself to create immunity. Absent evidence that such a contract can be traced to a colorable right to the Porrettos' land, which has not been adduced at this stage of the proceedings, the Park Board's lease from the GLO does not confer to the Park Board immunity from an inverse condemnation claim any greater than that held by the GLO.

4. In this respect, this case differs from cases in which the State is immune because it has provided evidence that it acted under of color of contract. *See, e.g., Holland,* 221 S.W.3d at 644 (noting that the State was immune from inverse condemnation claim based on infringement with patent rights because the State "presented uncontroverted evidence" it had acted "pursuant to contractual agreements").

the leases that allegedly interfere with use of the property stand firm. Because the state and federal constitutions grant authority to landowners to seek compensation for government takings, and the Porrettos properly have alleged such a claim, we hold that the trial court erred in granting the government defendants' pleas to the jurisdiction as to the Porrettos' inverse condemnation claim.

## Trespass to Try Title Claims against the Government Officials

The Porrettos further contend the trial court erred in dismissing their trespass to try title claims against governmental officials Patterson and Muller. Recognizing that the State and Galveston are immune from a trespass to try title action, the Porrettos rely upon *State v. Lain* to sue Patterson and Muller, who acted in their official capacities when executing the leases that the Porrettos contend cloud their title. 162 Tex. at 553, 349 S.W.2d at 582; *see also Griffin*, 161 Tex. at 426, 341 S.W.2d at 153.

In *Lain*, a landowner filed a trespass to title suit against the State and several of its officials, alleging that the State had trespassed on his land by constructing a ferry landing and dredging a channel over his property. 162 Tex. at 549, 349 S.W.2d at 580. The trial court dismissed the State as a party on its plea to the jurisdiction, but denied the pleas of the governmental officials. *Id.* The Texas Supreme Court affirmed the trial court's decision, holding that the State's immunity does not inure to the benefit of its officials:

When suit for recovery of title to and possession of land, filed without legislative consent, is not against the state itself, but is against individuals only, the mere assertion by pleading that the defendants claim title or right of possession as officials of the state and on behalf of the state, will not bar prosecution of the suit.

. . . .

One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for and on behalf of the state. *Id.* at 552, 349 S.W.2d at 581.

The *Lain* court then established the trial court's procedure for adjudicating such cases:

[W]hen officials of the State are the only defendants, or the only remaining defendants, and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in. If the plaintiff fails to establish his title and right of possession, a take nothing judgment should be entered against him as in other trespass to try title cases. If the evidence establishes superior title and right of possession in the sovereign, the officials are rightfully in possession of the sovereign's land as agents of the sovereign and their plea to the jurisdiction based on sovereign immunity should be sustained. If, on the other hand, the evidence establishes superior title and right of possession in the plaintiff, possession by officials of the sovereign is wrongful and the plaintiff is entitled to relief. In that event the plea to the jurisdiction based on sovereign immunity should be overruled and appropriate relief should be awarded against those in possession. . . . The judgment against the individuals, predicated as it is upon an incidental determination that title and right of possession is in the plaintiff, is not binding on the sovereign.

*Id.* at 552–53, 349 S.W.2d at 582. The Porrettos contend that the trial court prematurely sustained Patterson and Muller's jurisdictional pleas because *Lain* obligates a trial court to hear evidence regarding title and possession before dismissing the case. *Id.* Patterson and Muller respond that the Porrettos failed to object to the trial court's failure to hold a hearing.

In *Texas Parks & Wildlife v. Miranda,* the Texas Supreme Court held that a trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts should mirror that of a traditional summary judgment. 133 S.W.3d 217, 226–27 (Tex.2004); *see* Tex.R. Civ. P. 166a(c). The court explained that, by requiring the State to meet the summary judgment standard of proof, "we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.' " *Miranda,* 133 S.W.3d at 228 (quoting *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000)). Under *Miranda,* the burden is on the government to adduce evidence establishing as a matter of law that the trial court lacks jurisdiction. 133 S.W.3d at 228. The burden then shifts to the plaintiff to demonstrate that a disputed issue of material fact exists regarding the jurisdictional issue. *Id.* The defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue. *Id.* Because *Lain* requires the trial court to hold an evidentiary hearing before ruling on an official's plea to the jurisdiction, the initial burden was on Patterson and Muller to claim a superior right to the land on behalf of the government. *Lain,* 162 Tex. at 552–53, 349 S.W.2d at 582; *see Miranda,* 133 S.W.3d at 228. Only then does the burden shift to the Porrettos. In their answer and jurisdictional plea, the government did not deny the Porrettos' claim of title, nor did they attempt to show a right to the disputed land. Thus, the trial court's dismissal of the trespass to try title claim against the officials was premature.[5]

The court in *Lain* expressly held that a trespass to try title action can be maintained against governmental officials acting in their official capacities. *Lain,* 162 Tex. at 552, 349 S.W.2d at 581. "The rationale of the rule is that in such cases possession is not in fact held for the sovereign but is wrongfully held." *Id.* at 552, 349 S.W.2d at 582. It matters not that the officials claim that "title or right of possession is in the State." *Id.* at 581. While contrary to the general rule that in other circumstances, a suit against a governmental official in his official capacity is a suit against the State, the Texas Supreme Court has never overruled it, and thus we follow it.[6] *See DeMino v. Sheridan,* 176

---

5. The officials further respond that *Lain* is inapplicable because, in that case, the State was not a party, whereas here, the State is a party through the GLO, with respect to the Porrettos' claim for inverse condemnation. *Lain,* 162 Tex. at 549, 349 S.W.2d at 580. We find this distinction unpersuasive. In *Lain,* the State also was a party to the trespass to try title suit, but the trial court dismissed it on a plea to the jurisdiction, leaving only the government officials as defendants. *Id.* In this case, the trespass to try title claims are against the officials only. As such, Patterson and Muller are the "only remaining defendants" in the trespass to try title claim, as contemplated by *Lain. Id.* at 552–53, 349 S.W.2d at 582.

6. Although *Lain* expressly permits suit against government officials who wrongfully assert title in a landowner's private property to quiet title, and we follow it for that principle, we do not suggest that government officials waive immunity for money judgments sought in such a suit. *Lain,* 162 Tex. at 552, 349 S.W.2d at 581–82; *cf. Tex. Nat'l Res. Conserv. Comm'n v. IT–Davy,* 74 S.W.3d 849, 856 (Tex.2002) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money dam-

**712**

S.W.3d 359, 366 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

There being no evidence in the record from which to conclude that the government had a colorable right of possession, or even an assertion of right or title to the property in question, we hold that the trial court erred by granting Patterson's and Muller's pleas to the jurisdiction on the Porrettos' trespass to try title claims against them. We note that any judgment against Patterson and Muller does not bind the State. *See Lain,* 162 Tex. at 552, 349 S.W.2d at 582.

### Breach of Contract

The Porrettos further contend that the trial court erred by granting the GLO and Patterson's jurisdictional pleas on the Porrettos' breach of contract claims. They allege that the GLO and Patterson breached the settlement agreement by "refusing to provide a letter disclaiming any state interest in the Porrettos' waterfront lots above the mean high tide line." The Porrettos further contend that the GLO and Patterson have waived immunity from suit on the settlement agreement. In *Texas A & M University—Kingsville v. Lawson,* the Texas Supreme Court held that a governmental entity that agrees to settle a lawsuit from which it is not immune cannot claim immunity from suit for breach of the settlement agreement relating to that claim. 87 S.W.3d 518, 521 (Tex.2002) (plurality op.). The policy supporting this holding is that the government should not regain immunity it previously has waived by settling a case. *Id.* at 522. Because the GLO is not immune from the Porrettos' takings claim, under *Lawson,* the Porrettos' breach of contract claim can proceed, but only to the extent it arises out of the takings claim. *Id.* The trial court thus erred by granting the GLO's plea to the

jurisdiction on the Porrettos' breach of contract claim.

Although we have held that the Porrettos' trespass to try title action can proceed against Patterson, it does not follow that they may proceed with their breach of contract claim against him. The Porrettos' breach of contract claim seeks recovery for Patterson's failure to execute a letter disclaiming any interest *by the State* in portions of the disputed property. Only persons having actual authority to act on behalf of the State can bind it in contract. *State ex rel. Dep't of Crim. Justice v. Vitapro Foods, Inc.,* 8 S.W.3d 316, 322 (Tex.1999). Under *Lain,* however, if the Porrettos have superior title, possession by Patterson "is not in fact held for the sovereign but is wrongfully held." *Lain,* 162 Tex. at 552, 349 S.W.2d at 582. In its non-immune existence, the Porrettos' trespass to try title claim is founded on a theory that Patterson is acting outside his authority as a government official in possessing their property. Since the State is immune from a trespass to try title claim, Patterson cannot dispose of the State's immunity by settling the suit against him so as to bind the State—thus incurring a contractual obligation on behalf of the State arising out of a claim to which the State is immune. *See id.; see also Lawson,* 87 S.W.3d at 522 (noting that "a governmental entity would not, in settling a suit for which immunity has been waived, undertake an obligation that exposes it to liability much greater or different than that which it faced from the original claim."). The trial court therefore properly granted Patterson's plea to the jurisdiction on the Porrettos' claim for breach of contract against him.

### The Local Government Code

Relying on *Missouri Pacific Railroad v. Brownsville Navigation District,*

ages, such as a contract dispute, as a declaratory-judgment claim.").

the Porrettos contend that the Legislature generally has waived sovereign immunity for claims against park boards under section 306.041(a) of the Local Government Code, which provides that a park board "may sue and be sued in its own name." *Missouri Pac. R.R. v. Brownsville Navig. Dist.*, 453 S.W.2d 812, 813 (Tex.1970) (holding that such statutory language "is quite plain and gives general [legislative] consent for [a] District to be sued in the courts of Texas in the same manner as other defendants."). After the Porrettos filed their brief in this case, the Texas Supreme Court overruled *Missouri Pacific*, holding that "sue and be sued" statutes do not, in and of themselves, waive governmental immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex.2006). We therefore hold that the "sue and be sued" language in section 306.041(a) does not constitute an independent basis for denying the Park Board's plea to the jurisdiction. As section 306.041 is the only basis upon which the Porrettos rely to assert their claim for slander of title, we hold that the trial court properly dismissed that claim.

### Conclusion

We reverse the trial court's order as it relates to the Porrettos' inverse condemnation claims, and remand those claims for further proceedings. We reverse the trial court's order as it relates to the trespass to try title claims against Patterson and Muller, individually, and remand those claims for further proceedings. We reverse the order as it relates to the Porrettos' breach of contract claim against the GLO and remand that claim for further proceedings, but only insofar as that claim corresponds to the claim for inverse condemnation. We affirm the trial court's judgment as it relates to the Porrettos' breach of contract claim against Patterson, individually, and to the Porrettos' claims

for slander of title. All pending motions are denied as moot.

Chief Justice RADACK, dissenting.

SHERRY RADACK, Chief Justice, dissenting in part and concurring in part.

I respectfully dissent from the panel's resolution of issue one. The defendants argue that the Porrettos' case is not truly an inverse condemnation case, but is, in fact, a trespass to try title action because it involves a dispute over title to real property. The defendants also argue that, because the State is actually claiming ownership of the property, it has no intent to take the Porrettos' property. I agree with the defendants.

Texas courts have repeatedly held that a trespass to try title action is the proper method of adjudicating rival claims to real property. *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex.2004) (stating that trespass to try title is "*the* method for determining title to ... real property.") (quoting TEX. PROP.CODE ANN. § 22.001(a)); *Rogers v. Ricane Enters.*, 884 S.W.2d 763, 768 (Tex.1994); *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex.1983).

Thus, the question presented is whether the Porrettos can try the State's title in an inverse condemnation proceeding. I think not. In *Bell v. State Department of Highways and Public Transportation*, the plaintiff filed a declaratory judgment, seeking a declaration that he held title to property upon which the State had built a highway. 945 S.W.2d 292, 293 (Tex.App.-Houston [1st Dist.] 1997, writ denied), *abrogated on other grounds by Harris County v. Sykes*, 136 S.W.3d 635 (Tex.2004). *Id.* The State claimed title to the property by adverse possession. 945 S.W.2d 292, 293. This Court held that "[n]o matter how Bell's suit is styled, it is, as the trial court found, 'in effect' a trespass to try title suit." 945 S.W.2d at 294. This Court

further held that because Bell did not obtain legislative consent before bringing his trespass to try title action against the State, the trial court lacked subject-matter jurisdiction. *Id.*

In *Texas Southern University v. State Street Bank and Trust Co.*, the plaintiff entered into an equipment lease with Texas State University (TSU), a governmental entity. 212 S.W.3d 893, 897–98 (Tex.App.-Houston [1st Dist.] pet. denied). The plaintiff sued TSU, alleging that TSU had "taken" its equipment by inverse condemnation. *Id.* at 899. This Court held that because TSU was acting under color of contract, it was not exercising its eminent domain power. *Id.* at 911. As such, TSU lacked the requisite intent under constitutional takings jurisprudence. *Id.*

As in *Bell*, I believe that the Porrettos' claim is "in effect" a trespass to try title suit. Both the Porrettos and the State claim to own the property at issue. "Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought." *Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex.App.-Texarkana 1991, no writ). A trespass to try title suit is "*the* method for determining title to ... real property." *Martin*, 133 S.W.3d at 266; Tex. Prop.Code Ann. § 22.001(a) (Vernon 2000).

As in *TSU v. State Street Bank*, the Porrettos' pleading does not show the requisite intent necessary to establish a taking claim. The State claims the property under color of title; it is not "taking" property that it believes belongs to the Porrettos.

Indeed, were we to agree that the State's claim of title to real property could be adjudicated through a takings claim, we would be creating a waiver of the State's sovereign immunity in all actions involving the validity of the State's title to real property. The opposing party in a trespass to try title claim against the State would always be able to circumvent the State's immunity from suit simply by pleading his case as an inverse condemnation. Such artful pleading should not be permitted to effect a waiver of the State's sovereign immunity.

In sum, the Porrettos' takings claim fails because (1) it is "in effect" a trespass to try title action because it asks the court to adjudicate rival claims to the property, and (2) when acting under color of title, the State does not have the requisite intent to "take" the property of another. Because the Porrettos bring a trespass to try title action against the State, not a takings claim, they must first obtain legislative consent, which they did not do. *See State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961). Thus, the trial court properly granted the defendants' plea to the jurisdiction on the Porrettos' inverse condemnation claims.

Accordingly, I would overrule issue one.

Because I believe that the GLO is entitled to immunity, I would also hold that it is immune from the Porrettos' breach of contract claim. *See Tex. A & M Univ.—Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex.2002) (holding that if governmental entity agrees to settle lawsuit from which it is *not* immune, it cannot claim immunity from suit for breach of settlement agreement).

Accordingly, I would also overrule issue three in its entirety.

I concur in the remaining portions of the opinion.