Opinion issued August 18, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00289-CV

———————————

West Houston ChaRter School Alliance, Appellant

V.

Jean
Pickering,
Appellee



 



 

On Appeal from the 125th District Court

Harris County, Texas



Trial Court Case No. 2009-64131

 



 

MEMORANDUM OPINION

          This
interlocutory appeal from the trial court’s denial of a school’s plea to the
jurisdiction arises out of Jean Pickering’s claim that the school demoted and
constructively discharged her in retaliation for reporting that the school
board had violated the Texas Open Meetings Act. Because we conclude that
Pickering failed to initiate the school’s grievance procedure before filing her
whistleblower action, we reverse the trial court’s denial of the school’s plea
to the jurisdiction and dismiss Pickering’s claims against the school for lack
of jurisdiction. 

Background

          Pickering,
the school’s administrator, filed a suit against West Houston Charter School
Alliance and several of its board members, asserting that the school violated
the Texas Whistleblower Act by retaliating against her after she reported to
the Texas Education Agency that the board was holding meetings in violation of
the Texas Open Meetings Act.[1] See Tex. Gov’t Code Ann.
§ 554.002(a) (West 2004) (prohibiting governmental entity from taking adverse
personnel action against public employee who, in good faith, reports violation of law by employer or
another public employee to appropriate law enforcement authority); id. § 551.001–.146 (governing open
meeting requirements for governmental bodies). Pickering alleged two
incidents of retaliatory conduct. First, the school board placed her on “a
corrective plan at a final warning stage,” which Pickering asserted stripped
her of her responsibilities and was designed to serve as a demotion. The school
board presented the corrective action plan to Pickering at a July 9, 2009 board
meeting.  Second, Pickering alleged that
the board members damaged her reputation in the community and forced her to
resign on August 3, 2009, which constituted a constructive discharge. 

After Pickering initiated this
action, the school filed a plea to the jurisdiction, contending that Pickering
failed to initiate a grievance under the school’s grievance procedure before
filing suit. Pickering responded that the school’s grievance procedure did not
apply to her and that she had appealed the school’s actions by a letter her
attorney sent to the school board on July 22, “seeking a fundamentally fair
hearing on the matter.” 

The trial court denied the school’s
plea to the jurisdiction. In its order, the trial court stated:

All parties having appeared
in open court by and through their attorneys and all parties having agreed on
the record that plaintiff by and through her counsel did, on or about July 22,
2009, within 90 days of the claimed adverse employment action[,] g[i]ve written
notice to the Defendant’s Board of Trustees that the Plaintiff “appeal[ed] the
decision to place her on a professional growth plan and specifically
request[ed] that as part of that appeal, she be afforded a due process,
meaningful hearing pursuant to the mandates of Ferguson v. Thomas, before an impartial and academically oriented
hearing officer or panel.”

 

Having
heard arguments of counsel and considered the documents filed herein, the Court
is of the opinion and finds that Plaintiff initiated Defendant’s appeal
procedures, or that a fact dispute exists as to whether Plaintiff’s actions
initiated Defendant’s appeal procedures, and that Defendant’s Plea to the
Jurisdiction is not established as a matter of law.

 

This interlocutory appeal followed. See Tex.
Civ. Prac. & Rem. Code Ann.             § 51.014(a)(8) (authorizing
interlocutory appeal from the grant or denial of a governmental unit’s plea to
the jurisdiction); LTTS Charter Sch., Inc.
v. C2 Constr., Inc., No. 09-0794, 2011 WL 2420204, at *5–6 (Tex. June 17, 2011)
(holding that an open-enrollment charter school is a “governmental unit” for
purposes of section 51.014(a)(8)).[2]

Standard of Review

The school’s plea to the jurisdiction is a dilatory
plea that seeks dismissal of Pickering’s claims against it for lack of
subject-matter jurisdiction. Bland
Indep. Sch. Dist. v. Blue,
34 S.W.3d 547, 554 (Tex. 2000); Univ. of Houston v. Barth, 178 S.W.3d
157, 160–61 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Subject-matter jurisdiction
is essential to the authority of a court to decide a case. Tex. Ass’n of
Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443 (Tex. 1993); Barth, 178 S.W.3d at 161. The existence
of subject-matter jurisdiction is a question of law that we review de novo. State Dep’t
of Hwys. & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002); Kamel
v. Univ. of Tex. Health Sci. Ctr. at Houston, 333 S.W.3d 676, 681 (Tex.
App.—Houston [1st Dist.] 2010, pet. denied). 

When a plea to the jurisdiction challenges the existence of
jurisdictional facts, we apply a standard of review that mirrors the standard
applicable to traditional summary judgments. Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228
(Tex. 2004); see also Tex. R. Civ. P. 166a(c). The school bore
the initial burden of establishing that one or more facts necessary to
jurisdiction does not exist. See id. (observing
that this standard protects claimant from having to put on her case simply to
establish jurisdiction); Porretto v. Patterson, 251 S.W.3d 701, 711
(Tex. App.—Houston [1st Dist.] 2007, no pet.). If the school satisfied its
initial burden, the burden shifted to Pickering to put on evidence raising a
fact issue on the jurisdictional issue. Miranda,
133 S.W.3d at 228; Patterson, 251 S.W.3d at 711. In determining whether
these burdens have been met, we review the evidence in the light most favorable
to Pickering, indulging every reasonable inference in her favor and resolving
any doubts in her favor. Miranda, 133
S.W.3d at 228.

The School’s Plea to the Jurisdiction

In its plea to the jurisdiction, the school asserted that
the trial court lacked jurisdiction over Pickering’s whistleblower action
because she had not satisfied the Whistleblower Act’s requirement that she initiate
a grievance before filing suit in district court. In response, Pickering argued
that the school’s grievance procedure did not apply to Pickering’s complaints
and, alternatively, the letters she sent to the school board satisfied whatever
obligation she had under the grievance procedure. We conclude that the school’s
grievance procedure applied to Pickering’s complaints and that the evidence demonstrates
that Pickering failed to initiate a grievance under that procedure.

A.      The
Whistleblower Act’s grievance initiation requirement

 

As a prerequisite to initiating suit under the Whistleblower
Act, a claimant must first “initiate action under the grievance or appeal
procedures” of her governmental employer. Tex.
Gov’t Code Ann. § 554.006(a) (West 2004). This requirement is a
jurisdictional prerequisite, such that compliance is essential to the trial
court’s jurisdiction over a whistleblower action. Barth, 178 S.W.3d at 161–62.  Section 554.006 does not require a claimant to
exhaust her administrative remedies before filing suit; instead, she is only
required to initiate the grievance or appeal and allow the grievance authority
sixty days in which to render a decision. See
Univ. of Tex. Med. Branch v. Barrett, 159 S.W.3d 631, 632 (Tex. 2005); Hitchcock
Indep. Sch. Dist. v. Walker, No. 01-10-00669-CV, 2010 WL 5117912 (Tex. App.—Houston
[1st Dist.] Dec. 16, 2010, no pet.) (mem. op.). After the grievance authority
issues a decision, or after sixty days if no decision has been issued, then the
claimant has two choices: she may either exhaust the remedies available to her
under the employer’s grievance procedure or terminate the grievance and file
suit. See Tex. Gov’t Code Ann. § 554.006(d). The option she chooses
determines the time period within which her suit must be filed. See id. §§ 554.006(d), 554.005. 

The issue here is whether Pickering initiated a grievance
under the school’s grievance procedure, thus commencing the school’s sixty-day
period for issuing a decision, regardless of whether she exhausted her
administrative remedies under the grievance procedure. See id. §§ 554.006(d)(2), 554.005.

B.      The
evidence on whether Pickering initiated a grievance

In support of its plea to the jurisdiction, the school filed
evidentiary exhibits: an affidavit, three letters exchanged between Pickering
and the school, and a copy of the school’s grievance procedure, which the
school sent to Pickering. David Dwyer, former school board president, testified
in his affidavit that Pickering did not file a grievance with the school
relating to the July 9, 2009 corrective action plan or her August 3, 2009
resignation. 

The correspondence exhibits begin with a July 22 letter from
Pickering’s counsel to the school board, which accused the school board of
violating the Texas Open Meetings Act and retaliating against Pickering for
reporting the violations to the Texas Education Agency. It then stated: 

I am notifying you that Ms. Pickering appeals the decision
to place her on a professional growth plan and specifically requests that as
part of that appeal, she be afforded a due process, meaningful hearing pursuant
to the mandates of Ferguson v. Thomas,
before an impartial and academically oriented hearing officer or panel.
Specifically, Ms. Pickering requests that the hearing occur on July 27, 2009.

 

The school responded on July 27. In that letter, counsel for
the school defended the school’s actions, rejected opposing counsel’s
interpretation of Ferguson v. Thomas and
the due process implications of the situation, and disagreed that Pickering was
entitled to a hearing different from that afforded by the school’s grievance
procedure. The school’s counsel noted that Pickering had the opportunity to
express concerns and address issues with the school board at the July 9
meeting, but declined to do so. She then stated:

However, if she would like to grieve the Board’s action, she
may do so in accordance with the attached West Houston Charter School Grievance
procedure. In lieu of submitting to the School Administrator,[3]
as the procedure states, she should address the grievance to the School Board’s
President, Mr. David Dwyer, c/o Maureen Singleton, Thompson & Horton, 711
Louisiana, Suite 2100, Houston, Texas 77002.

 

The final correspondence in the record is Pickering’s
resignation letter to Dwyer on August 3, 2009. In the letter, Pickering attacked
Dwyer’s leadership of the school board, made accusations regarding his wife’s
service on a school committee, asserted that the corrective action plan was
based on false claims, complained of the process by which the corrective action
plan was adopted, and stated that the board’s actions against her had
undermined her authority with staff. Pickering then gave two weeks’ notice of
her resignation, which she asserted was forced by the “illegal conduct of your
Board and the clear intent to damage my career.” 

The record does not contain any evidence filed by Pickering
with respect to the school’s plea to the jurisdiction. In the text of her
response, Pickering relied on a letter she sent the school board on July 9,
2009. But she did not attach that letter to her response or otherwise make it
part of the record. Thus, although it is undisputed that Pickering sent the
school board a letter on this date, the letter itself is not in the record.
Pickering appended the letter to her appellate brief, but we may not consider material
appended to an appellate brief that is not in the record. E.g., Sowell v. The Kroger Co., 263 S.W.3d 36, 38 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (holding that requests for disclosure
filed as an appendix to appellate brief could not be considered because they
were not made part of the record); Till v. Thomas, 10 S.W.3d 730, 733–34 (Tex. App.—Houston [1st Dist.] 1999, no
pet.) (“We cannot consider documents attached to an appellate brief that do not
appear in the record.”).

C.      Pickering
is not excluded from the school’s grievance procedure

Pickering contends in her brief that the school’s grievance
policy does not apply to a dispute between the school’s administrator,
Pickering, and the school board. In support of this argument, Pickering relies
exclusively on the language of the school’s grievance procedure. The procedure addresses
grievances by an employee:

The Board will provide an opportunity at its regular and/or
special meetings for employees to present grievances for consideration and
response. 

 

Any employee who requests a hearing before the Board to
complain of the employee’s conditions of employment, the failure to promote, or
termination may do so by submitting a request to the School Administrator [Pickering]
within ten (10) calendar days of the incident or his or her receipt of
notification of the event that forms the basis of the person’s complaint. The
Board may hear the complaint at a regular or special Board meeting mutually
convenient to the School and the employee, and as permitted by law. The board
will hear grievances involving appointment, employment, evaluation, reassigned
duties, discipline, or dismissal/termination of an employee in closed session
unless the employee makes a written request that the hearing be conducted in
open session.

 

The
school’s grievance procedure also provides for the submission of documents, the
right to be represented by counsel, and time limits on the employee’s presentation
of the grievance and the administration’s response. The procedure requests that
the employee submit any documents she intends to rely on at the meeting at
least one week before the meeting. Finally, it provides that the board will
provide a response to the employee within twenty days of the meeting at which
the employee’s grievance is presented.

          We do not agree that the school’s
grievance procedure does not apply to Pickering’s complaints. The procedure
specifically states that “[a]ny employee” may request a hearing by submitting
the request to the school administrator within the ten-day period, and it
specifically lists “the employee’s conditions of employment” and “termination”
among the topics upon which a grievance may be filed. By its plain language,
the grievance procedure applied to Pickering and the complaints she maintains
here. See Davis v. Dallas Cnty. Schs., 259 S.W.3d 280, 283–84 (Tex.
App.—Dallas 2008, no pet.) (rejecting argument that procedure that authorized
grievance concerning “conditions of work” did not apply to retaliatory
discharge claim); cf. City of Houston v. Williams, No. 09-0770,
2011 WL 923980, at *15 (Tex. Mar. 18, 2011) (holding that grievance procedures
in collective bargaining agreement did not apply to retired firefighters, where
procedures only allowed for grievance by union or “bargaining unit
firefighter,” which was defined to include only full-time employees); see also Tucker v. City of Houston,
No. 01-00-01194-CV, 2001 WL 754487, *2–3 (Tex. App.—Houston [1st Dist.] July 5,
2001, pet. denied) (holding that city’s appeal procedure applied to employee
and employee’s letter stating that he would not pursue appeal provisions of
city’s procedure did not initiate grievance or appeal procedure).

We can, however, see how the procedure may have left
Pickering uncertain as how she should go about requesting a hearing, since she
is the person to whom such requests are submitted under the policy. On July 27,
2009, the school sent Pickering a copy of the grievance procedure and requested
that if she wished to submit a grievance, she submit it to the school board
president, Dwyer, at the address provided in the letter. While Pickering did
not have this information when she sent the July 22 letter that she contends
was sufficient to initiate the school’s grievance procedure, she did send that
letter to Dwyer and the other board members. 

We conclude there was some uncertainty in the policy as to
whom Pickering should submit her request for hearing, at least until July 27,
2009. But this uncertainty did not prejudice her because her letter was sent to
the appropriate official. More importantly, such uncertainty does not excuse her
from her obligation to initiate a grievance under the school’s grievance
policy. See Univ. of Tex. Med. Branch v. Hohman, 6 S.W.3d 767, 775 (Tex.
App.—Houston [1st Dist.] 1999, pet. dism’d w.o.j.) (“When it is unclear whether
the employer has a post-termination grievance procedure, or it is unclear what
the procedure is, and the terminated employees timely notify the employer that
they are invoking the grievance procedure, terminated employees have adequately
implicated the grievance procedures.”) (citing Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721, 724 (Tex. App.—Houston
[1st Dist.] 1995, writ denied)); see also
Berry v. Bd. of Regents of Tex. S.
Univ., 116 S.W.3d 323, 325 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied) (“To the extent the steps in such a [grievance] procedure are
unclear, as in this case, an employee’s request to ranking officials of the
employer to invoke the procedure (i.e., whatever it may be) can hardly
be denied effect, but an employee is not relieved of the requirement to
initiate a grievance.”). The school’s grievance procedure clearly informed
Pickering that to initiate a grievance she needed to request a hearing before
the school board. We therefore review the evidence to determine if Pickering submitted
a request for a hearing before the school board to any board member or other
appropriate person associated with the school.

D.      Pickering
did not comply with the school’s grievance procedure

Pickering’s petition asserts two incidents on which her
claims rest: the July 9 corrective action plan and Pickering’s August 3
“constructive discharge.” In its plea to the jurisdiction, the school asserts
that Pickering failed to initiate a grievance within ninety days of both incidents,
as required by the Whistleblower Act. Tex.
Gov’t Code Ann. § 554.006(b).[4]
We therefore turn to that issue.

1.       Pickering’s
alleged constructive discharge

School board president Dwyer’s affidavit states that
Pickering did not initiate a grievance relating to her alleged August 3, 2009 constructive
discharge. The only communication in the record that makes any reference to
Pickering’s resignation or constructive discharge is her August 3rd resignation
letter, which does not request a hearing or make any mention of a grievance or
appeal, though she had a copy of the grievance procedure at that time. Pickering’s
timeline of events in her petition does not indicate she had any communications
with the school board after her August 3rd resignation. Nor does she contend on
appeal that she initiated or attempted to initiate a grievance with respect to her
August 3rd resignation. The trial court’s ruling is expressly based on
Pickering’s July 22 letter, which predated Pickering’s resignation. This letter
does not reference Pickering’s resignation. The record thus establishes that
Pickering did not initiate a grievance with respect to the August 3, 2009
constructive discharge alleged in her petition. See Jordan v. Ector Cnty.,
290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.) (holding that grievance
filed before employee’s termination could not satisfy section 554.006 with
respect to her whistleblower claim based on retaliatory termination). The trial
court therefore erred in denying the school’s plea to the jurisdiction with
respect to Pickering’s constructive discharge claim.

2.       Pickering’s
alleged demotion

On appeal, Pickering relies extensively on her July 9 letter
to the school board to show that she initiated a grievance regarding her
“demotion” via the corrective action plan. But we cannot determine whether this
letter was sufficient to initiate grievance because we cannot consider its
contents, which were not made part of the record. See Sowell, 263 S.W.3d
at 38; Till, 10 S.W.3d at
733–34. Although the letter’s existence is not disputed, the mere existence of
a letter from Pickering to the school board does not establish compliance with
the school’s grievance procedure. We cannot tell whether the letter notified
the school that Pickering sought to invoke its grievance procedure. See Hohman,
6 S.W.3d at 775 (noting that, when grievance procedure is unclear, employee may
satisfy statutory requirement by timely notifying employer that she is invoking
the grievance procedure); Berry, 116 S.W.3d at 325 (noting that when
grievance procedures are unclear, an employee’s request to ranking officials to
invoke the grievance procedure will be effective). The July 9 letter,
therefore, is not evidence that Pickering initiated the school’s grievance
policy for her alleged demotion.

          In her July 22 letter, relied on by
the trial court, Pickering complained of the board’s negative appraisal of her
performance and specifically stated that Pickering “appeals the decision to
place her on a professional growth plan,” but does not contend that such action
constituted a demotion. She then requested that “as part of that appeal, she be
afforded due process, meaningful hearing pursuant to the mandates of Ferguson v. Thomas, before an impartial
and academically oriented hearing officer or panel.” Essentially, Pickering
communicated a desire to appeal the school board’s decision to place her on a
corrective action plan but not a desire to do so through the school’s grievance
procedure, which only entitled her to a hearing before the board. Instead,
Pickering’s counsel wanted the school to create a certain type of hearing
procedure for Pickering so that her claims could be heard by a different
authority, presumably because her complaints related to alleged misconduct by board
members themselves. 

Although Pickering’s counsel represented that Pickering had
a due process right to this type of hearing, he provided no basis for that
assertion. The evidence demonstrates that Pickering was an at-will employee of
the school. At-will employees generally have no property right in their
continued employment that will support a due process claim, and the existence
of a grievance procedure does not, alone, create such a property right. See Cnty. of Dallas v. Wiland, 216
S.W.3d 344, 353–54 (Tex. 2007) (stating that administrative system that
provides at-will employees procedures for hearing and deciding grievances does
not, alone, create property rights); Trostle v. Combs, 104 S.W.3d 206,
211 (Tex. App.—Austin 2003, no pet.) (“A protected property interest in
employment, process, or benefit exists only when an employee has a ‘legitimate
claim of entitlement’ to the employment, process, or benefit. . . . The
presumption that employment in Texas is at will is difficult to overcome.”)
(internal citations omitted); see also Hitchcock v. Bd. of Trs. Cypress-Fairbanks
Indep. Sch. Dist., 232 S.W.3d 208, 217–18 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (rejecting due process, open courts, and equal protection
challenges to school’s fifteen-day deadline for initiating grievance
procedure).

In her July 27 response to Pickering’s July 22 letter, the
school’s counsel told Pickering that the due process rights she invoked were
not applicable to her as an at-will employee. The school’s counsel invited
Pickering to initiate a grievance pursuant to the school’s grievance procedure,
which she provided to Pickering as an attachment to the letter, and advised
Pickering on where to send a request for hearing. Pickering did not respond or
take further action to initiate a grievance. Pickering’s only further
communication with the school was her August 3 resignation letter.

We conclude that Pickering’s July 22 letter put the school on
notice that Pickering wished to challenge the board’s decision to place her on
a corrective action plan. See Hitchcock Indep. Sch. Dist. v. Walker,
No. 01-10-00669-CV, 2010 WL 5117912, at *6 (Tex. App.—Houston [1st Dist.] Dec.
16, 2010, no pet.) (holding that properly filed grievance contained sufficient
reference to basis for retaliation claim to satisfy section 554.006’s
initiation requirement).[5]
But Pickering’s request for a hearing before a different grievance authority,
and her decision not to take any further action after the school declined that request
and provided her with a copy of the school’s grievance procedure, demonstrates
that Pickering neither expected nor desired a hearing before the school board—the
only grievance process recognized in the school’s grievance procedure. The
school’s July 27 letter made Pickering aware that it did not believe she had
initiated a grievance, and her subsequent conduct demonstrates that she also
did not believe she had initiated the school’s grievance procedure by her July
22 letter. She never responded that she felt her July 22 letter was sufficient
and no request to Dwyer was necessary. She never inquired when her hearing
before the board would be. She never submitted any documents in anticipation of
a hearing. Rather, her conduct indicates that she believed she was entitled to
an independent grievance authority and was unwilling to have her grievance
heard by the school board, as provided in the school’s grievance procedure.

Merely complaining of the school board’s action, without
attempting to comply with the grievance procedure provided by the school, does
not satisfy section 554.006’s requirement that a claimant initiate a grievance
or appeal before filing suit. See  Ruiz v. Austin Indep. Sch. Dist., No. 03-02-00798-CV,
2004 WL 1171666, at *7 (Tex. App.—Austin May 27, 2004, no pet.) (holding that
employee who had copy of grievance procedure did not satisfy section 554.006 by
raising concerns in meetings with school and its attorneys when employee failed
to formally initiate a grievance). The purpose of section 554.006’s initiation
requirement is “to afford the governmental entity with the opportunity to
investigate and correct its errors and to resolve disputes before incurring the
expense of litigation.” Walker, 2010
WL 5117912, at *6. The school’s grievance procedure provided a process by which
the school could conduct such an investigation, allowing for the presentation
of the grievance by the complainant or her counsel, response from a
representative of the administration, and the submission of documents. By declining
to participate in a hearing before the school board, Pickering denied the
school a full opportunity to investigate her allegations and to adequately
develop a basis for resolving her complaints. See Aguilar v. Socorro Indep.
Sch. Dist., 296 S.W.3d 785, 789–90 (Tex. App.—El Paso 2009, no pet.)
(holding that claimant did not satisfy section 554.006’s initiation requirement
when she filed a grievance but then refused to participate in school’s
arbitration hearing and observing that “[b]y not complying with the arbitrator’s
requests for information or presenting information that would allow the
arbitrator to reach a decision, Aguilar’s action did not serve the purpose of the
statute—to afford the employer ‘the opportunity to correct its errors by
resolving disputes before being subjected to the expense and effort of
litigation.’”).

Pickering contends that the school owed her a duty to
respond to her “appeal” by informing her that it was denying her request for a
“meaningful hearing” that complied with due process before “an impartial and
academically oriented hearing officer or panel” but would grant her a hearing
before the board or a hearing pursuant to the written grievance procedure. But
the statute places the onus on Pickering to initiate the grievance procedure,
and the school provided her with its written grievance procedure and told her where
to send her request for hearing. See Tex. Gov’t Code Ann. § 554.006(a) (“A public
employee must initiate action under the grievance or appeal procedures of the
employing state or local governmental entity . . .”). Pickering elected not to
do so. 

We hold that a claimant does not properly initiate a
grievance when she communicates her complaints but conditions her request for
appeal on the provision of a grievance process that she knows to be different
than the process in the school’s grievance procedure and declines to initiate a
grievance under the school’s existing procedure after it has been provided to
her. See Ruiz, 2004 WL 1171666, at *7 (holding claimant did not
initiate grievance procedure by making school aware of her whistleblower claims
when school informed her of its grievance procedure and claimant failed to take
further action); cf. Van Indep. Sch.
Dist. v. McCarty, 165 S.W.3d 351, 353–54 (Tex. 2005) (“We also decline to
adopt our dissenting colleague’s view that administrative procedures can be
ignored if a creative applicant convinces a court that some other procedure was
just as good. An employee’s letter, phone call, or chance conversation with a
member might give a board ‘the first chance to consider his grievance,’ but
exhaustion of administrative remedies generally requires compliance rather than
avoidance.”).[6]

          3.       Summary

There were no disputed facts in this case: the parties agree
on what communications were made and when. The dispute here is over the legal
import of those communications. Specifically, did the July 22 letter initiate the
school’s grievance procedure? We hold that the evidence—the grievance policy,
the July 22 letter, the July 27 letter, the August 3 letter, and the affidavit—satisfied
the school’s initial burden of proving that Pickering did not initiate a
grievance with respect to its July 9 corrective action plan or Pickering’s
August 3 resignation. See Miranda,
133 S.W.3d at 228; Porretto, 251 S.W.3d at 711. The burden then shifted
to Pickering to come forward with evidence raising an issue of fact as to
whether she initiated a grievance under the school’s grievance procedure. See Miranda, 133 S.W.3d at 228; Patterson,
251 S.W.3d at 711. Pickering presented no evidence, and we find no evidence in
the record, raising a fact question as to whether she “initiate[d] action under
the [school’s] grievance or appeal procedures.” Tex. Gov’t Code Ann. § 554.006(a). The trial court therefore erred
in denying the school’s plea to the jurisdiction. See Miranda, 133 S.W.3d at 228; Patterson, 251 S.W.3d at 711.

Conclusion

          We hold that the evidence before the
trial court on the school’s plea to the jurisdiction conclusively established
that Pickering failed to initiate a grievance in accordance with the school’s
grievance procedure. Because initiation of a grievance or appeal is a
jurisdictional prerequisite to suit under the Whistleblower Act, the trial
court erred in denying the school’s plea to the jurisdiction. We reverse the
trial court’s order and dismiss Pickering’s claims against the school for lack
of jurisdiction.

 

                                                                    Harvey
Brown

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Brown and Huddle.











[1]
          Pickering pled that the
individual school board members conspired with the school to violate the
Whistleblower Act and asserted a claim against them for intentional infliction
of emotional distress. The claims against the individual defendants are not at
issue here.





[2]           West Houston Charter School Alliance is an
open-enrollment charter school.





[3]           Pickering was the school
administrator.





[4]           Both the statute and the school’s
grievance procedure allow for this deadline to run from the date an incident is discovered through reasonable diligence,
but the record establishes that Pickering was aware of these incidents as of
July 9 and August 3, respectively.

 





[5]
          The facts of this case are, in
some ways, the inverse of the facts in Walker.
In Walker it was undisputed that
Walker properly filed a level one grievance according to the school’s grievance
procedure, but the parties disputed whether the substance of that grievance was
sufficient to put the school on notice of Walker’s whistleblower claim. Walker, 2010 WL 5117912, at *6. Here,
there is little dispute that the school understood the nature of Pickering’s
retaliation complaint, but the parties disagree about whether Pickering
properly filed a grievance in accordance with the school’s grievance procedure.





[6]
          Although McCarty analyzes whether a party has exhausted administrative
remedies, rather than whether a party has initiated an administrative process,
its reasoning is analogous to the extent that a whistleblower claimant may be
required to comply with the employer’s procedure for initiation of a grievance
rather than engaging in conduct aimed at avoiding, rather than commencing, the
process outlined in the employer’s grievance or appeal procedure.