

# NUMBER 13-12-00341-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CAMERON COUNTY, TEXAS,
CARLOS H. CASCOS, SOPHIA BENAVIDES,
JOHN WOOD, DAVID A. GARZA, AND
EDNA TAMAYO,                                                    Appellants,

v.

FRANK A. TOMPKINS, INDIVIDUALLY
AND AS TRUSTEE,
CAROLYN TOMPKINS YOUNG,
PERRY TOMPKINS, AND LAWRENCE YOUNG,            Appellees.

On appeal from the 138th District Court
of Cameron County, Texas.

# OPINION

Before Chief Justice Valdez, and Justices Benavides and Perkes
Opinion by Justice Perkes

Ownership of land that comprises a portion of Andy Bowie Park on South Padre Island is at issue in this lawsuit. Appellant Cameron County leased the land to a third party so that a hotel could be built on it. Appellees Frank A. Tompkins, individually and as Trustee, Carolyn Tompkins Young, Perry Tompkins, and Lawrence Young [1] (collectively "the Tompkinses") sued Cameron County, Cameron County Judge Carlos H. Cascos, and Cameron County Commissioners Sophia Benavides, John Wood, David A. Garza, and Edna Tamayo (collectively "the County Officials") in their official capacity, alleging various causes of action, and contending that the lease violated an easement that the land be used only "for public park, and parkway and park road" purposes. By a single issue, Cameron County and the County Officials argue the trial court erred when it denied their plea to the jurisdiction. [2] We affirm in part and reverse and remand in part.

---

[1] Although Cameron County and the County Officials did not identify Perry Tompkins and Lawrence Young as appellees, the record shows they are parties to this appeal. Pursuant to the trial court's November 16, 2010 order, Perry Tompkins and Lawrence Young joined this litigation as plaintiffs on November 30, 2010 and were parties to the trial court's order denying Cameron County and the County Officials' plea to the jurisdiction. The third supplemental clerk's record reflects that Perry Tompkins and Lawrence Young are the respective spouses of Frank A. Tompkins and Carolyn Tompkins Young.

[2] This court has jurisdiction to hear an interlocutory appeal from an order denying a governmental unit or its official's plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (West 2008); *see also id.* § 101.001 (West 2005) (defining "governmental unit" so as to include the County); *Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003) (holding a county is a governmental unit protected by sovereign immunity); *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845 (Tex. 2007) ("A person sued in an official capacity should be able to appeal the denial of a jurisdictional plea in the same way as his employing governmental unit because both defendants' interests in pleading sovereign immunity are identical.").

# I.   FACTUAL AND PROCEDURAL BACKGROUND[3]

## A.   Establishment of Andy Bowie Park

Frank A. Tompkins and Carolyn Tompkins Young are John L. Tompkins' alleged heirs.   On July 11, 1952, John L. Tompkins, as Trustee, conveyed to Cameron County a total of 224.672 acres of land located in Cameron County, Texas, "for public park, and parkway and park road purposes" (collectively "Park Purposes").   On April 2, 1958, he re-conveyed the same property to Cameron County but "correctly reflected" the acreage as 225.818 acres to be used for Park Purposes.   The Tompkinses maintain that the 1952 and 1958 instruments created a public park easement and that after the conveyance of the easement, the County established Andy Bowie Park on the acreage.[4]

The Tompkinses allege that in 1969, John L. Tompkins, as Trustee, conveyed to Frank A. Tompkins, as Trustee, the property he owned in Cameron County, including the acreage which comprises Andy Bowie Park.   The Tompkinses contend that Frank A. Tompkins owns the property for the benefit of himself and the other appellees.

## B.   Construction of Convention Center on a Portion of Andy Bowie Park

In 1988 the Town of South Padre Island sought to construct a convention center on a portion of Andy Bowie Park leased from Cameron County.   Accordingly, in March 1989, Cameron County and the Town of South Padre Island filed a declaratory-judgment action against Frank A. Tompkins, II[5] and Carolyn Tompkins Young asking the district

---

[3]   Except as otherwise noted, the factual background is derived from the Tompkinses' Fifth Amended Original Petition, their live pleading in the trial court.

[4]   The County alleges that since 1952, it peacefully possessed the property known as Andy Bowie Park.

[5]   The Tompkinses allege "Frank A. Tompkins is also known as Frank A. Tompkins, II."

court[6] to declare that the construction of a convention center on the land was consistent with the requirement that the land be used solely for Park Purposes. After the case was removed to federal court, the parties settled the declaratory-judgment action.

In connection with the settlement, the Tompkinses conveyed to the Town of South Padre Island all of their right, title and interest in the property including, but not limited to, any reversionary rights in the surface estate of a portion of Andy Bowie Park lying west of the center line of Park Road 100. The Tompkinses contend that no other rights were conveyed in connection with the settlement, but instead were reserved. The convention center was later constructed on the property conveyed to the Town of South Padre Island.

## C. Construction of a Hotel on Another Portion of Andy Bowie Park

On October 16, 2007, without the Tompkinses' knowledge or agreement, Cameron County, as approved by the County Judge and the County Commissioners, entered into a concession agreement with Bharat R. Patel, President d/b/a Affiliated Management Systems. Pursuant to the concession agreement, Cameron County leased to Patel approximately 6.5 acres in Andy Bowie Park, thereby abandoning the alleged Park Purposes easement on the leased property. The leased property is within the area covered by the alleged Park Purposes Easement. The concession agreement stated that the leased "property shall be used for business . . . including, but not limited to, hotel amenities and the sale of restaurant-related food items . . . or any similar forms of

---

[6] According to the Tompkinses' live pleading, the lawsuit was styled *Cameron County, Texas and the Town of South Padre Island, Texas v. Frank A. Tompkins, II, and Carolyn T. Young*, Cause No. 89-03-1150, in the 197th Judicial District Court of Cameron County, Texas.

4

recreation/business facilities or shops normally found in a resort, spa, or Convention Style Development Hotel."

In March 2009, Cameron County and Affiliated Hospitality LLC entered into ground lease agreements, leasing approximately 6.5 acres in Andy Bowie Park to Affiliated Hospitality LLC. Affiliated Management Systems, Affiliated Hospitality LLC, and Patel[7] thereafter constructed a Hilton franchise hotel on the acreage of Andy Bowie Park leased pursuant to the concession agreement and subsequent ground lease agreements.

The Tompkinses further allege that Cameron County later sought to lease additional acreage of Andy Bowie Park to a private company, which was to be used as a commercial hotel resort. The Tompkinses contend that on or about February 11, 2008, Cameron County published a Request for Proposal for Hotel Resort Development on 20.91 acres of Andy Bowie Park. The Request for Proposal stated the "County is interested in the development of a Time Share Resort Hotel" and "may consider a lease for a minimum of an initial 40 year term with an option to extend."

**D. The Present Lawsuit**

In October 2009, Frank A. Tompkins and Carolyn Tompkins sued the County and County Officials. The Tompkinses allege that Cameron County and the County Officials, by their conduct, abandoned the County's easement to use the land for Park Purposes and that Frank A. Tompkins, as Trustee, is the fee owner of the 6.5 acres leased for the first hotel and the 20.91 acres proposed for the second hotel. According to the

---

[7] The record reflects that Bharat R. Patel and the Affiliated entities settled with the Tompkinses prior to the trial court's denial of Cameron County's plea to the jurisdiction and that they are no longer parties to this litigation.

Tompkinses, Frank A. Tompkins presently owns the hotel and proposed-hotel acreage, "including" the acreage which "comprises Andy Bowie Park," (collectively "the Property") for his benefit and that of the other appellees.[8] The Tompkinses have asserted an inverse-condemnation claim against the County and County Officials under the Texas and United States Constitutions; seek a declaratory judgment that the County abandoned its entire easement because a hotel is not a Park Purpose; seek declaratory judgment that they own the Property in fee simple; and seek to quiet title to the Property based on the County and County Officials' abandonment of the easement.

Cameron County maintains that it is the fee owner of the acreage it leased to the hotel or alternatively that the hotel is a Park Purpose. Approximately fifteen months after this lawsuit was filed, the County asserted its plea to the jurisdiction. By its plea, the County and County Officials argue that the trial court lacks jurisdiction over the Tompkinses' inverse-condemnation, declaratory-judgment, and quiet-title claims because sovereign immunity bars the claims, and because the Tompkinses allegedly failed to present these claims pre-suit in accordance with Texas Local Government Code section 89.004. After a non-evidentiary hearing, the trial court denied the plea to the jurisdiction in its entirety.[9] This appeal ensued.

---

[8] In their petition, the Tompkinses also characterize the land at issue in this litigation as "that portion of Andy Bowie Park lying east of the center line of Park Road 100."

[9] In their plea to the jurisdiction, the County and County Officials did not challenge the Tompkinses' *ultra-vires* claims against the County Officials which appear to have first been pleaded on May 23, 2012 in the Tompkinses' Fifth Amended Original Petition. Because the *ultra-vires* claims were not at issue in the plea to the jurisdiction, they are not at issue in this appeal from the trial court's order denying the plea to the jurisdiction. We also note the County and County Officials do not specifically challenge the *ultra-vires* claims in their appellate brief.

6

## II.  ISSUES PRESENTED

Appellants' sole issue on appeal challenges the trial court's denial of their plea to the jurisdiction.  By several sub-issues,[10] appellants argue that the trial court lacks jurisdiction because:  (1) the claims against the County are barred by sovereign immunity; (2) the claims against the County are barred because of the failure to provide the sixty-day pre-suit notice, *see* TEX. LOCAL GOV'T CODE ANN. § 89.004; (3) the claims against the County Officials are barred by sovereign immunity because they were only sued in their official capacity; and (4) the Tompkinses lack standing to assert their claims in this lawsuit.

## III.  STANDARD OF REVIEW

To render a binding judgment, a court must have both subject-matter jurisdiction over the controversy and personal jurisdiction over the parties.  *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010).  A plaintiff bears the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction.  *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *State of Tex. Parks & Wildlife Dept. v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.).

A plea to the jurisdiction is a dilatory plea; its purpose is to defeat a cause of action without regard to whether the claims asserted have merit.  *Hidalgo County v. Dyer*, 358 S.W.3d 698, 703 (Tex. App.—Corpus Christi 2011, no pet.).  In deciding a plea to the jurisdiction, a court may not weigh the merits of the causes of action, but must consider only the plaintiff's pleadings and any evidence in the record pertinent to the jurisdictional

---

[10]  Appellants have not numbered their sub-issues, so we will be relying upon our enumeration in disposing of their respective sub-issues on appeal.

7

inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002*); City of Laredo v. Nuno*, 94 S.W.3d 786, 788 (Tex. App.—San Antonio 2002, no pet.). The reviewing court should address the existence of subject-matter jurisdiction claim-by-claim. *See, e.g., Dyer*, 358 S.W.3d at 704 (citing *Thomas v. Long*, 207 S.W.3d 334, 338–39 (Tex. 2006)).

An order denying a plea to the jurisdiction based on governmental immunity is reviewed de novo*. See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). If a plea to the jurisdiction challenges the pleadings, the reviewing court must construe the pleadings liberally in favor of the plaintiff. *Id.* at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the plaintiffs should be afforded the opportunity to amend their pleadings. *Id.* at 226–27. If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider relevant evidence submitted by the parties. *Id.* at 227. A court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea, and the fact issue must be resolved by the fact-finder. *Id.* at 227–28.

## IV. ANALYSIS

### A. Immunity Bars the Tompkinses' Quiet-Title and Declaratory-Judgment Claims

By their first sub-issues, the County and County Officials argue that immunity bars the Tompkinses' claims for quiet title and declaratory judgment because they are in essence trespass-to-try-title claims. We agree.

8

A county is a governmental unit protected by sovereign immunity. *Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex. 2003). The Supreme Court of Texas recently reaffirmed that, without the State's consent, a trespass-to-try-title action against the State is barred by sovereign immunity even if it is brought as a declaratory-judgment action under the Declaratory Judgments Act. *Tex. Parks & Wildlife Dept v. Sawyer Trust*, 354 S.W.3d 384, 388–89 (Tex. 2011) (citing TEX. PROP. CODE ANN. § 22.001(a) & TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a)). The Declaratory Judgments Act may not be used to create a right of action against the State that would not otherwise exist. *Id.* at 388. Under *Sawyer Trust*, suits to try the State's title to property are immunity-barred and we look to the "real substance" of a declaratory-judgment action to determine whether it is a claim for title. *Id.* at 389.

A suit to "quiet title" and a "trespass-to-try-title claim" are both actions to recover possession of land unlawfully withheld, though a quiet-title suit is an equitable remedy whereas a trespass-to-try-title suit is a legal remedy afforded by statute. *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. App.—Corpus Christi 1977, writ ref'd n.r.e.)). Here, the Tompkinses' "quiet title" suit is barred because it is a suit against the State for title to land—which is barred by governmental immunity. *See id.*; *see also Sawyer Trust*, 354 S.W.3d at 388. At oral argument, counsel for the Tompkinses unequivocally stated that by their quiet-title suit, the Tompkinses seek judgment that they are the fee owners of the Property. This proposed remedy is evident from their pleadings as well.

9

We disagree with the Tompkinses that the County waived its immunity from suit for the quiet-title claim by defending itself against the present lawsuit. The Thompkinses argue that by seeking a summary judgment that it held the title to the Property and by waiting fifteen months after suit was filed to assert its plea to the jurisdiction, the County waived its immunity as to the quiet-title claim. We disagree. It is the province of the Legislature, not the judicial branch, to create a waiver-by-conduct exception to sovereign immunity in this context; it has not done so for title claims. Further, the County did not counterclaim or otherwise plead a claim for damages against which any recovery against the County could be offset. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 413–14 (Tex. 2011) (rejecting argument that equity required a waiver of immunity by conduct in a breach-of-contract suit); *see also Webb County v. Khaledi Props., Ltd.*, No-04-12-00251-CV, 2013 WL 3871060, at \*3 (Tex. App.—San Antonio July 24, 2013, no pet. h.) (mem. op.) (explaining if an equitable waiver-by-conduct exception to sovereign immunity is viable in Texas, it would apply in "exceptional" circumstances). To hold the County waived its immunity from quiet-title claims by its conduct in this litigation would defeat the litigation-avoidance purpose of governmental immunity and potentially engender further litigation concerning the extent to which the County waived its immunity. *See City of Alton*, 354 S.W.3d at 414.

The Tompkinses' declaratory-judgment action fails because it too is a claim for title to land. 354 S.W.3d at 386. In *Sawyer Trust*, the Sawyer Trust sued the Texas Parks and Wildlife Department for a declaratory judgment that a river running through the Trust's land was not navigable and that the Trust therefore owned the riverbed. *Id.* at

385. The Supreme Court held the Trust's claim for declaratory judgment was immunity-barred because the "real substance" of the Trust's declaratory-judgment action was a claim for title against the State. *Id.* at 389. In this case, as shown by their live pleading at the time of the hearing on the plea to the jurisdiction, the Tompkinses seek the following relief by their declaratory-judgment action:

> a judgment declaring that: (1) the County was granted an easement, not a fee simple interest, in the land in question; (2) leasing the land to resort hotels does not qualify as using the land for [Park Purposes]; (3) the County thereby abandoned the [e]asement by allowing the development and construction of a hotel on the land and actively encouraging the development and construction of a second hotel resort on the [P]roperty; (4) the [e]asement terminated as a result of the County's abandonment of the [e]asement; and (5) the Tompkins[es] own the land unburdened by the [e]asement.

During oral argument, the Tompkinses' counsel unequivocally asserted that by their declaratory-judgment action, the Tompkinses seek declaratory judgment that they are the fee owners of the Property. Like the requested non-navigability declaration in *Sawyer Trust*, the effect of the requested declaration that the County abandoned the Park Purposes easement would be to establish title in the Tompkins. Thus, the Tompkinses' declaratory judgment action against the County and County Officials is barred because, in substance, it is a suit for title to land brought against the State. *See id.* We sustain the County's first sub-issue to the extent it challenges the Tompkins' quiet-title and declaratory-judgment claims.

## B. The Tompkinses' Inverse-Condemnation Claim

By their first sub-issue, the County and County Officials also argue the Tompkinses' inverse-condemnation claim is immunity-barred. By their

11

inverse-condemnation claim, as set forth at oral argument and in their live pleading and appellate brief, the Tompkinses seek monetary compensation for the County's alleged taking of their property for public use—a hotel. The County argues there is no evidence of a taking in this case because it was acting akin to a private party leasing private property it owned. We agree with the Tompkinses.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. Likewise, the United States Constitution provides "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Sovereign immunity does not shield the State from claims based on unconstitutional takings of property. *Sawyer Trust*, 354 S.W.3d at 390. Whether the government's actions are sufficient to constitute a taking is a question of law. *Id.* (citing *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex. 2001)).

To establish a takings claim, the claimant must seek compensation because the defendant intentionally performed actions that resulted in taking, damaging, or destroying property for public use without the owner's consent. *Id.* at 390–91. "Whether a taking has occurred depends largely on definitional and conceptual issues." *Id.* at 391 (citing 2A JULIUS L. SACKMAN, NICHOLS ON EMINENT DOMAIN § 6.01[1] (3d ed. 2006)). The premise for a constitutional-takings cause of action is that one person should not have to absorb the cost of his property being put to a public use unless he consents. *Id.* "[I]f the government could claim immunity for a taking by simply asserting title, then it need never

12

legally condemn land—it 'could simply appropriate it, and the landowner would be entitled to no compensation unless the Legislature granted him permission to sue." *Porretto*, 251 S.W.3d at 708 (quoting *Griffin v. Hawn*, 341 S.W.2d 151, 153 (Tex. 1960)).

Both the County and the Tompkinses claim that they own the land, and viewing, as we must, the Tompkinses' allegation in the light most favorable to conferring jurisdiction,[11] an allegation that the County conveyed leasehold rights to a third party on land they own for public use and without consent or compensation is an allegation of a taking.[12] *See id.* at 709 (citing *State v. Reimer*, 94 S.W.3d 103, 109 (Tex. App.—Amarillo 2002, no pet.) (holding that allegations that State's lease and other actions that resulted in taking of oil and gas were sufficient to state an inverse-condemnation claim); *Kenedy Mem'l Found. v. Mauro*, 921 S.W.2d 278, 282 (Tex. App.—Corpus Christi 1995, writ denied) (holding an inverse-condemnation claim survived jurisdictional plea where the foundation alleged that state mineral leases encroached on the foundation's property)). Particularly in light of the County's prior lawsuit against the Tompkinses to secure its right to lease land for a convention center in Andy Bowie Park, we find this case distinguishable from one in which

---

[11] At oral argument, the County adamantly maintained that determining the issue of who owns the Property is an issue that is not before this Court in this interlocutory appeal. We agree. In ruling on the County's motion that the Tompkinses are estopped as a matter of law from claiming ownership of the Property because they allegedly failed to disclose their ownership interest in a prior bankruptcy, the trial court ruled that the County did not prove estoppel as a matter of law. There may be a fact issue on whether the Tompkinses failed to disclose their ownership interest in the Property in the bankruptcy as could result in their ownership stake, if any, becoming part of the bankruptcy estate subject to the bankruptcy trustee's disposal. That bankruptcy issue has not been briefed in this interlocutory appeal, nor was the apparently voluminous record on this issue, developed before a special master in the trial court, included in the appellate record.

[12] Immunity does not bar an inverse-condemnation claim. *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining that a takings claim is not equivalent to a trespass-to-try-title suit because the relief available for a takings differs from a suit to quiet title and concluding that immunity does not bar a takings claim); *Kenedy Mem'l Found. v. Mauro*, 921 S.W.2d 278, 281–82 (Tex. App.—Corpus Christi 1995, writ denied) ("Governmental immunity offers no shield against a taking claim brought under Article I section 17 of the Texas Constitution.").

13

the State's ownership claim is uncontested. *See id.* at 709–10. We overrule the County's first sub-issue to the extent it challenges the Tompkinses' inverse-condemnation claim.

## C. Local Government Code Section 89.004

By their second sub-issue, the County and County Officials argue the Tompkinses' alleged failure to comply with the pre-suit notice requirements of Texas Local Government Code section 89.004 is a jurisdictional bar to their claims in this lawsuit. In pertinent part, the current version of section 89.004 provides as follows:

> (a) Except as provided by Subsection (c), a person may not file suit on a claim against a county or an elected or appointed county official in the official's capacity as an appointed or elected official unless the person has presented the claim to the commissioners court and the commissioners court neglects or refuses to pay all or part of the claim before the 60th day after the date of the presentation of the claim.
> . . . .
>
> (c) A person may file a suit for injunctive relief against a county. After the court's ruling on the application for temporary injunctive relief, any portion of the suit that seeks monetary damages shall be abated until the claim is presented to the commissioners court and the commissioners court neglects or refuses to pay all or part of the claim by the 60th day after the date of the presentation of the claim.

TEX. LOCAL GOV'T. CODE ANN. § 89.004(a), (c) (West 2008).

Section 89.004 is a presentment statute that promotes settlement by allowing a county commissioners court an opportunity to investigate a claim and adjust it without litigation. *See Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998) (discussing presentment statute). The presentment statute and its predecessors "date back well over one hundred years." *Id.* at 188.

The County and County Officials have not briefed whether the current version of

14

section 89.004 is applicable to this lawsuit. *See* TEX. R. APP. 38.1. Instead, they assume it applies. However, the enabling legislation for the statute states, "This Act applies only to a claim arising under a contract executed on or after September 1, 2003. A claim that arises under a contract executed before September 1, 2003, is governed by the law as it existed on the date the contract is executed, and the former law is continued in effect for that purpose."[13] *See* Section 4(b) of Acts 2003, 78th Leg., ch. 1203. The claims at issue in this litigation arise under deeds executed in 1952 and 1958, respectively.

Assuming without deciding that section 89.004 or its predecessor statute applies to the Tompkinses' inverse-condemnation claim, we hold it is not a jurisdictional bar to the Tompkinses' inverse-condemnation claim, *see Forge v. Nueces County*, 350 S.W.3d 740, 745 (Tex. App.—Corpus Christi 2011, no pet.), and that the County waived its right to demand compliance with the presentment statute because it waited until after the purposes of the presentment statute—to promote settlement and avoid litigation—were defeated to invoke the statute, *see Garcia-Marroquin v. Nueces County Bail Bond Bd.*, 1 S.W.3d 366, 374 (Tex. App.—Corpus Christi 1999, no pet.). Rather than invoking the presentment statute at the time of filing their answer or shortly thereafter, the County and County Officials litigated this case on the merits for well over a year before arguing the Tompkinses failed to present the inverse-condemnation claim to the commissioners court

---

[13] We note that the immediate predecessor to the current presentment statute, then section 81.041 of the Texas Local Government Code, provided, 'A person may not sue on a claim against a county unless the person has presented a claim to the commissioners court and the commissioners court has neglected or refused to pay all of the claim.' *Dallas County v. Coutee*, 233 S.W.3d 542, 545 (Tex. App.—Dallas 2007, pet. denied) (quoting TEX. LOCAL GOV'T. CODE ANN. § 81.041(a) [Vernon 1999]). The Tompkinses quote the predecessor statute in their appellate brief and note it is "substantively the same as" the current statute.

15

for payment prior to filing suit. *See id.* The County filed motions for summary judgment, filed multiple pleadings, and participated in numerous hearings on the merits before raising this argument.

We overrule the County and County Officials' second sub-issue. Because sovereign immunity bars the Tompkinses' quiet-title and declaratory judgment claims, we need not consider whether they would be barred under section 89.004.[14] *See* TEX. R. APP. P. 47.1.

## D. The County Officials' Immunity in this Lawsuit

By their third sub-issue, the County and County Officials argue that their immunity is co-extensive in this lawsuit. We agree that the County Officials have co-extensive immunity with the County for the Tompkinses' quiet-title, declaratory-judgment, and inverse-condemnation claims because the County Officials were sued in their official capacity, and not as individuals. *See Nueces County v. Ferguson*, 97 S.W.3d 205, 214–15 (Tex. App.—Corpus Christi 2002, no pet.). We sustain the County and County Officials' third sub-issue. As discussed above, however, we conclude the Tompkinses' inverse-condemnation claim survives the County and County Officials' plea to the jurisdiction on the record presently before us and we express no opinion herein on the viability of the Tompkinses' *ultra-vires* claims against the County Officials in their official capacity.

---

[14] We express no opinion regarding whether the Tompkinses presented their *ultra-vires* claims, if necessary, because the issue was not specifically briefed. The Tompkinses' live pleading is silent on the issue and the broad language of the Tompkinses' presentment affidavit leaves open the possibility that the *ultra-vires* claims are among the "various additional claims" the Tompkinses allegedly presented pre-suit.

16

**E. The Tompkinses' Standing to Bring this Lawsuit**

By their fourth sub-issue, the County and County Officials argue that the Tompkins lack standing to bring this lawsuit because they are not the owners of the Property.[15]

The general test for standing in Texas requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). A plaintiff has standing to sue if: (1) the plaintiff has sustained, or is immediately in danger of sustaining, some direct injury as a result of a complained-of wrongful act; (2) there is a direct relationship between the alleged injury and the claim asserted; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact; or (5) the plaintiff is an appropriate party to assert both its own interest and the public interest in the matter. *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 649 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *El Paso Cmty. Partners v. B & G/Sunrise Joint Venture,* 24 S.W.3d 620, 624 (Tex. App.—Austin 2000, no pet.).

The record shows that the Tompkinses have standing to bring this lawsuit because they asserted an ownership interest in the Property and a related injury, and because they presented a real controversy between themselves and the County concerning that

---

[15] The County and County Officials are permitted to raise the standing issue for the first time on appeal, although it is preferable to raise the issue as early as possible in litigation. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (holding ripeness and standing components of subject-matter jurisdiction could be raised for first time in interlocutory appeal concerning whether plaintiffs exhausted their administrative remedies prior to filing suit); *see also Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 531 (Tex. 2012) (holding school district could raise challenge implicating lack of subject-matter jurisdiction for the first time on appeal though preferred practice is to raise the issue at the earliest opportunity); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012) (holding subject-matter jurisdiction can be challenged for first time on interlocutory appeal).

17

ownership interest. *See e.g., City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 246 (Tex. App.—San Antonio, pet. denied).

At oral argument, the County and County Officials argued for the first time in this litigation that the Tompkinses lack standing because they forfeited their ownership interest in the Property by failing to disclose their ownership interest in a prior bankruptcy proceeding. *See e.g., Bailey v. Barnhart Interest, Inc.*, 287 S.W.3d 906, 909–10 (Tex. App.—Houston 2009 [14th Dist], no pet.) (explaining that once an asset becomes part of a bankruptcy estate, the debtor's rights in the asset are extinguished and a debtor is under a continuing duty to disclose its assets); *see also In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (concluding nondisclosure of sizeable asset in bankruptcy was not inadvertent and holding debtors were therefore estopped from claiming asset). The record, however, does not include the evidence presented in the trial court wherein the County and County Officials argued the bankruptcy matter as an issue of estoppel, as opposed to one of standing. In their live pleading, the Tompkinses do not make any assertions pertaining to the alleged nondisclosure of their property interest in the bankruptcy. Because the Tompkinses may be able to amend their pleading to include facts demonstrating their standing in light of the prior bankruptcy, under the applicable standard of review, we must allow them the opportunity to do so. *See Miranda*, 133 S.W.3d 226–27; *Hendee v. Dewhurst*, 228 S.W.3d 354, 382 (Tex. App.—Austin 2007, review denied). We overrule the County and County Officials' fourth sub-issue.

18

## V. CONCLUSION

We reverse the trial court's order denying the County's plea to the jurisdiction regarding the Tompkinses' quiet-title and declaratory-judgment claims, and render judgment dismissing those claims with prejudice. We affirm the trial court's denial of the County and County Officials' plea to the jurisdiction regarding the Tompkinses' inverse-condemnation claim. This case is remanded to the trial court for proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Delivered and filed the
24th day of October, 2013.