**Reversed and Remanded and Memorandum Opinion filed December 23, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00265-CV

---

### PURPLE MARTIN LAND COMPANY, LLC, Appellant

### V.

### DIANA GORDON OFFORD; WINTER GORDON, JR.; AND JOYCE STEIN, Appellees

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 15-DCV-225272**

---

### MEMORANDUM OPINION

This appeal concerns a dispute over two tracts of land in Fort Bend County. Appellant Purple Martin Land Co., LLC ("Purple Martin") appeals the trial court's order and final judgment dismissing its claims against appellees Diana Gordon Offord, Winter Gordon Jr., and Joyce Stein ("the Gordons").[1] In two issues, Purple

---

[1] We will refer to individuals with the same last name by their first name to avoid confusion. Furthermore, the Gordons' live petition fails to describe Stein's relationship to any of their claims. Purple Martin's appellate brief notes: "It is unclear what relationship Defendant

Martin argues (1) the trial court erred when it granted the Gordons' plea to the jurisdiction on the basis that Purple Martin lacked standing, and (2) the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law. We reverse the trial court's order and judgment and remand for further proceedings.

## I.   BACKGROUND

This dispute concerns two tracts of land originally owned in fee simple by Nathan and Agnes Lewis: (1) a 20.295-acre tract in Fort Bend County, Texas, Noel F. Roberts League, abstract number seventy-nine; and (2) a 19.14-acre tract in Fort Bend County, Noel F. Roberts League, abstract number seventy-nine. We will refer to both tracts of land together as the "Property."

According to the Gordons, Nathan died in 1918 and Agnes died in 1919. The parties agree that Nathan and Agnes died intestate and were survived by six children: Luviolet, Frank, Simon, Fannie, Charity, and Kate. The parties also agree that Nathan and Agnes's six children inherited the Property and owned it as tenants in common.[2] The Gordons further aver that Nathan and Agnes's six children partitioned each of the two tracts into six equal lots.

According to Purple Martin, Nathan and Agnes have over 100 descendants in the present day. In 2018, Purple Martin began to acquire undivided interests in the Property from the descendants of two of Nathan and Agnes's children: Frank and Fannie. After paying a total of $756,276.41 to various descendants, Purple

---

Joyce Stein has to the Property." The Gordons have not addressed who Stein is in their brief, and they only mention Stein when identifying the appellees.

[2] Nathan and Agnes had a seventh child that died at birth. According to the Gordons, Frank died around 1964, Simon around 1960, Luviolet around 1957, Fannie in 1940, Katy in 1955, and Charity in 1980. According to Purple Martin, Frank died in 1958, Simon at an unknown date, Luviolet died before 1893, Fannie in 1940, Kate in 1955, and Charity in 1980.

Martin received ninety-eight deeds conveying undivided interests in the Property as tenants in common.

Diana and her brother, Winter, are descendants of Nathan and Agnes's daughter Charity. In 2015, the Gordons filed suit for declaratory judgment to quiet title to nine of the twelve lots in the Property as to multiple individuals, including all persons owning, having, or claiming an interest in certain lots in the Property, and the unknown heirs of Frank, Simon, Luviolet, Fannie, Kate, Charity, and Nathan. The Gordons' lawsuit concerned four of the six lots in the 20.295-acre tract and five of the six lots in the 19.14-acre tract. As to the 20.295-acre tract, the lawsuit sought to quiet title to lots one, three, four, and six, which, according to the partition agreement advanced by the Gordons, originally belonged to Kate, Fannie, Charity, and Simon, respectively.[3] As to the 19.14-acre tract, the lawsuit sought to quiet title to lots one through five, which, according to the partition agreement advanced by the Gordons, originally belonged to Fannie, Luviolet, Simon, Frank, and Charity, respectively.

In their live petition, the Gordons alleged that Winter owns lots one and three of the 20.295-acre tract because Winter has had exclusive use and possession of these lots for over twenty-five years. The Gordons also alleged that Diana owns lots four and six in the 20.295-acre tract and owns lots one through five of the 19.14-acre tract because she has had exclusive use and possession of those lots for over forty years.

In October of 2018, Purple Martin filed suit against the Gordons and

---

[3] The Gordons' live petition stated that they sought to quiet title as to tracts one, three, four, and six. However, the Gordons' live petition later addressed lot two of the 20.245-acre tract, which originally belonged to Frank per the partition agreement advanced by them. The Gordons noted in their petition that Winter had exclusive use and possession of tract two for over fifty years.

asserted causes of action for trespass to try title, action to quiet title, and for declaratory judgment, seeking to resolve the dispute between the parties regarding ownership of the Property. In their live petition, Purple Martin alleged that Nathan and Agnes's heirs at law inherited undivided interests in the Property and that Purple Martin has acquired interest to the Property through descendants of Frank and Fannie. Purple Martin further alleged that the Gordons: made a written demand of Purple Martin "to relinquish their interest in deference and yielding to [the Gordons'] claim of adverse possession, and their other asserted means of derivation of title"; and "have claimed entitlement to vitiate the Deeds under which [Purple Martin] has acquired its titled interest in succession to the undivided interests of others in the [P]roperty." The Gordons filed a general denial, alleging that Purple Martin lacked standing. In January of 2019, the trial court consolidated the Gordons and Purple Martin's lawsuits.

On August 16, 2019, the Gordons filed a "Plea to the Jurisdiction Pursuant to Chapter 22 of the Texas Property Code Section 22.001, trespass to try title." In their plea, the Gordons argued that: Purple Martin lacked standing; the suit should be dismissed under the TCPA because it concerned matters of public concern and issues related to the health and safety of the public; Purple Martin's claims should be dismissed because Purple Martin does not have clear and specific evidence of the elements of their trespass-to-try-title claim; and the Gordons owned the property in fee simple because they adversely possessed it for at least ten years pursuant to Texas Civil Practice and Remedies Code § 16.0265. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.0265 (titled "Adverse Possession by Cotenant Heir: 15-year Combined Limitations Period"). The Gordons also argued that Purple Martin's lawsuit "involves an attempt . . . to use trickery, criminality[,] and outright fraud to steal a property that is owned by" them.

4

Purple Martin filed a response to the Gordons' plea and a brief in support of its response to the Gordons' plea. On August 30, 2019, the Gordons supplemented their plea and argued that Purple Martin's claims should be dismissed because: (1) Purple Martin does not have standing to maintain its trespass-to-try-title claims, (2) the partition of the Property destroyed the Nathan Lewis Estate, (3) Diana acquired "a complete interest" in Frank's lot on the 19.14 parcel through a foreclosure sale, and (4) the Gordons acquired title to the Property pursuant to § 16.0265 because they adversely possessed it for over ten years.

## A. HEARING ON THE GORDONS' PLEA TO THE JURISDICTION

At a hearing on the Gordons' plea, the trial court heard testimony from six witnesses.

### 1. Purple Martin's Evidence

The trial court admitted into evidence the genealogical records of Nathan and Agnes's descendants and deeds executed by Sheryl Lewis and Cheryl Bryant—descendants of Frank and Fannie, respectively—conveying their interest in the Property to Purple Martin. The trial court also admitted into evidence a copy of a 1982 survey of the Property performed by Steinkamp, a land surveyor. Steinkamp's 1982 survey divided each of Nathan and Agnes's two tracts into six lots and listed one of Nathan and Agnes's children in each of the six lots in both tracts.

Kim Sobieski, an executive vice president with Texas State Title Company, testified that she reviewed Nathan and Agnes's ancestry records and the deed records for the Property. Sobieski found a deed conveying the Property to Nathan and Agnes, but she did not find any subsequent deeds, including any foreclosure deed or any partitions. The records from Sobieski's 2018 search of the Fort Bend

County Appraisal District records and her 2019 search of Fort Bend County's real property records were admitted into evidence. The records included an aerial photo from the Fort Bend County Appraisal District showing each of the two tracts of land divided into six lots and the taxes that were assessed as to each of the lots separately.[4]

## 2. The Gordons' Evidence

Diana testified that she is a descendant of Charity, Nathan and Agnes's daughter, and that she has lived all of her life on one of the lots at issue.[5] According to Diana, each of Nathan and Agnes's six children "lived on their own little spot" on the Property. Diana confirmed that Steinkamp surveyed the land in 1982 per her request and that the survey divided the two tracts into six lots each. Diana testified that the Fort Bend Central Appraisal District accepted Steinkamp's 1982 survey and began to tax the lots accordingly. However, heirs to certain lots on the Property failed to pay their taxes. Diana explained the tax office sued the entire estate and that she and Winter paid the taxes for the entire estate. Diana testified that she has been paying the taxes on the Property since 1982.

---

[4] As to the six lots composing the 19.14-acre tract, the appraisal district's records listed the owner as "LEWIS NATHAN ESTATE"; however, the legal description for each lot listed one of Nathan and Agnes's six children after the legal description of the lot. As to Fannie's lot, the appraisal district's records contained the following information:

**Owner Name:**          LEWIS NATHAN ESTATE

. . . .

**Legal Description:**   0079 N F Roberts, Tract 1, Acres 3.19, (Fannie Lewis) (Diana)

As to Charity's lot, the appraisal district's record listed Sinnia Gordon, Diana's mother, in the "Legal Description" field after listing Charity. The four lots listing Fannie, Simon, Frank, and Kate also listed Diana under the legal description. As to the six lots composing the 20.295-acre tract, the appraisal district records listed the owner as "LEWIS NATHAN ESTATE" and did not list any of Nathan and Agnes's children or any other person after the lot description.

[5] While Diana did not specify which lot she lived on, the record supports the conclusion that she lived on lot four in the 20.295-acre tract, which originally belonged to Charity, per the partition agreement advanced by the Gordons.

According to Diana, the tax office of Fort Bend County and the Lamar Consolidated Independent School District ("Lamar ISD") sued her to collect past-due taxes. The trial court admitted into evidence documentation from a 1993 lawsuit brought by Lamar ISD for unpaid taxes on ten of the twelve lots from the Property's original tracts, which was filed against multiple defendants, including Diana and any heirs of Nathan and Agnes. Diana explained that the lawsuit was brought against ten of the twelve lots because no taxes were owed on the two tracts not included in the suit. Diana also testified that there was another tax lawsuit regarding 3.487 acres in the 20.295-acre tract identified under "Kathryn"; that Diana and Winter are currently trying to pay off the approximately $300,000 judgment against that lot; and that they have paid over $100,000 on the judgment.

Diana testified that she is listed in the legal description of some of the lots in the records of the appraisal district because "long years ago on this particular piece of property and at the time when . . . I paid it off . . . I asked them that I be awarded the property, if I paid off these tax suits, so that's where they added my name on this particular tract of land." The evidence admitted regarding the suit brought by Lamar ISD contains a handwritten note signed by "D. Gordon Offord" stating, in regard to one of the lots, that the lot "[b]elongs to another heir who says he is not going to pay any more taxes. . . . I [am] willing to pay the taxes on this property if the court will award it to me." The evidence also shows that Lamar ISD's suit was dismissed for want of prosecution.

## B. TRIAL COURT'S RULING

On January 24, 2020, the trial court signed an order dismissing Purple Martin's claims for lack of jurisdiction. That same day, the trial court signed a final judgment containing a muniment of title, in which the trial court found: (1) the partition of Nathan and Agnes's Property executed by their six children rendered

7

void any interest acquired by Purple Martin; and (2) the Gordons acquired ownership interests in five of the six lots on each of the 20.295-acre and 19.14-acre tracts. The trial court further ordered that the judgment serve as a muniment of title vesting title in the Gordons as to those ten lots.

On February 17, 2020, the trial court issued findings of fact and conclusions of law, which provided in relevant part:

- Nathan and Agnes died intestate and were the original owners of the property at issued described as the "Nathan Lewis Estate."

- The original Nathan Lewis Estate contained two tracts of land: (1) a 20.295 acre tract, Noel F. Roberts League, abstract number seventy nine, in Fort Bend County; and (2) a 19.14 acre tract, Noel F. Roberts League, abstract number seventy nine, in Fort Bend County.

- Nathan and Agnes were survived by six children (Katie, Luviolet, Fannie, Charity, Frank, and Simon), and their children became joint owners of the Nathan Lewis Estate with an equal right to possession with other joint owners subject to any leases.

- The six children entered into a partition agreement dividing the original Nathan Lewis Estate/Property into six lots for each tract of land, totaling twelve lots.

- Tom Lewis, Sr., the son of Frank, was last seen in possession of the partition agreement and died in 1975; Tom "inadvertently failed to record the agreement"; and the agreement has since been lost.

- Purple Martin's "ownership interest in the Original Nathan Lewis Estate was rendered invalid by the partition of the property . . . . That partition is final. Accordingly, even if the recording of the partition agreement was

8

not made in strict compliance with the terms of the recording statute of the state of Texas, [Purple Martin] was not 'personally aggrieved.'"

- The 1982 survey of the twelve tracts of the Estates of Katie, Luviolet, Fannie, Charity, Frank, and Simon represent the agreement of the six children.

- The boundary survey has been on record with the Fort Bend County Taxing Authorities ("FBCTA") and the Fort Bend Central Appraisal District ("FBCAD") since 1982. Since 1982, FBCAD and FBCTA acknowledged the twelve tracts and assigned them respective tax identification and FBCAD reference numbers.

- The Gordons have ownership in fee simple in ten of the twelve lots because the Gordons adversely possessed the property since 1982 and "acquired title or ownership interests by will, and/or in lieu of property Tax foreclosure."

Purple Martin filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Purple Martin timely appealed.

## II. PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.* "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

Whether a trial court has subject matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject matter

jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *See id.* We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See id.* at 226, 228.

If the defendant challenges the existence of jurisdictional facts with supporting evidence, then the standard of review mirrors that of a summary judgment. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Carmichael v. Tarantino Props., Inc.*, 604 S.W.3d 469, 474 (Tex. App.—Houston [14th Dist.] 2020, no pet.). If the relevant evidence is undisputed or fails to raise a fact question on the jurisdiction issue, then the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. However, if the evidence creates a fact issue regarding the jurisdictional issue, then the trial court cannot grant the plea, and the fact issue will be resolved by the fact finder. *Id. at* 227. When the facts underlying the merits and subject-matter jurisdiction are intertwined, the plaintiff need only show that there is a disputed material fact regarding the jurisdictional issue. *Id.* at 227–28 ("[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists."); *see also Carmichael*, 604 S.W.3d at 475.

### III.   STANDING

Whether a party has standing to bring a cause of action is a question of law we review de novo. *See Farmers Tex. Cnty. Mutual Ins. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). "[S]tanding is a component of subject matter jurisdiction."

*Id.*; *see Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) ("A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it.").

"In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman*, 369 S.W.3d at 154. "[T]he standing inquiry begins with the plaintiff's alleged injury." *Id.* at 155. "The injury 'must be concrete and particularized, actual or imminent, not hypothetical.'" *Id.* (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008)). Furthermore, the plaintiff's injury must be fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Tex. Propane Gas Assoc. v. City of Houston*, 622 S.W.3d 791, 799 (Tex. 2021).

"[W]hether a plaintiff has established his right 'to go forward with [his] suit' or 'satisfied the requisites of a particular statute' pertains 'in reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court to afford it." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773–74 (Tex. 2020) (quoting *Dubain Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). "Thus, a plaintiff does not lack standing in its proper, jurisdictional sense 'simply because he cannot prevail on the merits of his claim; he lacks standing [when] his claim of injury is too slight for a court to afford redress." *Id.* (quoting *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 488–85 (Tex. 2018)); *see also Pike*, 610 S.W.3d at 773–74 (discussing how Texas courts have in the past incorrectly applied "the label 'standing' to statutory or prudential considerations that 'do not implicate subject matter jurisdiction' but determine whether a plaintiff 'falls within the class of [persons] authorized to sue' or otherwise has 'a valid . . . cause of action." (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.

11

118, 128 & n.4 (2014))).

A plaintiff who has no interest at all in the land at issue lacks standing to assert a trespass-to-try-title action. *Wolfe v. Devon Energy Prod. Co., L.P.*, 382 S.W.3d 434, 443 (Tex. App.—Waco 2012, pet. denied); *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.); *see, e.g.*, *Walston v. Lockhart*, 62 S.W.3d 257, 259 (Tex. App.—Waco 2001, pet. denied).

## IV. DISCUSSION

In their plea to the jurisdiction, the Gordons argued that Purple Martin did not own an interest in the Property because the partition agreement voided Purple Martin's deeds and because the Gordons owned ten of the twelve lots in the Property—as delineated by the alleged partition agreement—pursuant to a tax foreclosure sale, a will, and adverse possession under § 16.0265 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.0265. The trial court's order, judgment, and findings of fact and conclusions of law upheld these four arguments and used them as the bases for its determination that Purple Martin lacked standing to bring its claims for trespass to try title. By two issues on appeal, Purple Martin challenges the legal and factual sufficiency of the relevant findings of fact and conclusions of law underlying the bases for the trial court's conclusion that Purple Martin lacked standing. For the reasons discussed below, we conclude that the Gordons failed to establish that Purple Martin lacked standing.

First, we note that despite being couched in terms of standing, the Gordons' arguments in their plea concern the Gordons' own competing claims to title, as well as Purple Martin's failure to prove elements of its trespass-to-try-title action. *See Lance v. Robinson*, 543 S.W.3d 723, 735 (Tex. 2018) ("To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of

12

conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned."). Whether Purple Martin acquired an ownership interest in the Property through its deeds in light of the Gordons' competing claims to the Property is a fact issue to be resolved in the parties' underlying suit. *See* Tex. Prop. Code Ann. §§ 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."), 22.002 ("A headright certificate, land scrip, bounty warrant, or other evidence of legal right to located and surveyed land is sufficient title to maintain a trespass to try title action."); *Lance*, 543 S.W.3d at 736 ("The trespass-to-try-title statute . . . applies when the claimant is seeking to establish or obtain the claimant's ownership or possessory right in the land at issue."); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex. 2013) (noting that a determination of the claimant's "legal interests and possessory rights . . . is the very relief that the trespass-to-try-title statute governs"); *see also Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021) ("A claim of title by adverse possession is a dispute over title to land; thus, '*the* method' to resolve it is a statutory trespass-to-try-title action.") (emphasis in original); *Hahn v. Love*, 394 S.W.3d 14, 33 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title."). In other words, viewing Purple Martin's petition and deeds in the light most favorable to Purple Martin, we conclude that Purple Martin raised a fact issue as to whether it acquired an ownership interest in the Property. *See* Tex. Prop. Code Ann. § 22.002; *Miranda*, 133 S.W.3d at 226–28. Purple Martin has presented a real controversy between Purple Martin and the Gordons' concerning that ownership interest and the parties' competing claims of title to the Property. *See Tex. Propane Gas Assoc.*, 622 S.W.3d at 799; *Heckman*, 369 S.W.3d at 150. Therefore, Purple Martin has

13

standing to pursue its claims. *See* Tex. Prop. Code Ann. §§ 22.001(a), 22.002; *Tex. Propane Gas Assoc.*, 622 S.W.3d at 799; *Heckman*, 369 S.W.3d at 150; *Ramsey*, 313 S.W.3d at 505; *see also, e.g.*, *Cameron County v. Tompkins*, 422 S.W.3d 789, 801 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) ("The record shows that the Tompkinses have standing to bring this lawsuit because they asserted an ownership interest in the Property and a related injury, and because they presented a real controversy between themselves and the County concerning that ownership interest.").

Second, as discussed below, we conclude that the grounds underlying the trial court's order and judgment are unmeritorious.

## A.     PARTITION AGREEMENT

The trial court found that Nathan and Agnes's children entered into a written partition agreement, dividing the two tracts composing the Property into twelve lots, and that this partition voided Purple Martin's deeds.

Generally, when one or more individuals jointly own a property, the relationship between the owners is a joint tenancy or co-tenancy. *See Laster v. First Huntsville Props., Co.*, 826 S.W.2d 125, 129 (Tex. 1991) ("A cotenancy is formed when two or more persons share the unity of exclusive use and possession in property held in common."); *Rife v. Kerr*, 513 S.W.3d 601, 612–13 (Tex. App.—San Antonio 2016, pet. denied) ("Generally, when more than one individual jointly owns a property, the relationship between the owners is a 'joint tenancy' or 'cotenancy.'"). Any cotenant has a right to be in possession of real property in which he owns an interest. *Todd v. Bruner*, 365 S.W.2d 155, 160 (Tex. 1963) (per curiam).

Cotenants may also voluntarily partition land by written agreement.

14

*Dierschke v. Central Nat'l Branch of First Nat'l Bank at Lubbock*, 876 S.W.2d 377, 380 (Tex. App.—Austin 1994, no writ); *see* Tex. Prop. Code Ann. § 23.001 ("A joint owner or claimant of real property or an interest in real property or a joint owner of personal property may compel a partition of the interest or the property among the joint owners or claimants under this chapter and the Texas Rules of Civil Procedure."); *Hous. Oil Co. v. Kirkindall*, 145 S.W.2d 1074, 1077 (Tex. 1941) ("It is settled in this State that persons who are common owners of land may effect a division or partition thereof by written instrument or deed."). A deed of partition, however, does not confer or convey title, but merely dissolves the tenancy in common. *Hous. Oil Co.*, 145 S.W.3d at 1077; *see Bunting v. McConnell*, 545 S.W.2d 30, 31 (Tex. App.—Houston [1st Dist.] 1976, no writ) ("A partition of land does not confer or convey title, but merely dissolves the tenancy in common."); *see also Hahn v. Gips*, No. 13-16-00336-CV, 2018 WL 771908, at *5–6 (Tex. App.—Corpus Christi–Edinburg Feb. 8, 2018, pet. denied) (mem. op. on reh'g) ("Generally, a partition deed does not operate as a conveyance or transfer of title."); *Backhus v. Wisnoski*, No. 01-07-00041-CV, 2008 WL 660013, at *3 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op.) ("Because partition affects only the right to possession, it does not confer or convey title of the property, and it merely dissolves the tenancy in common.").

Assuming, without deciding, that Nathan and Agnes's six children partitioned the Property, we nevertheless conclude that the alleged partition did not void Purple Martin's deeds. This is because the alleged partition agreement did not eliminate the interest of Frank or Fannie's heirs in their respective lots in the Property. Instead, the alleged partition agreement designated a lot in each tract that belonged to Frank and Fannie and their heirs. *See Hous. Oil Co.*, 145 S.W.3d at 1077; *Bunting*, 545 S.W.2d at 31. Thus, we conclude that the trial court erred when

it found that Purple Martin's deeds were void as a result of the alleged partition agreement.

## B.     TAX FORECLOSURE SALE

In their plea, the Gordons argued:

> The foreclosure sale was complete because the "purported foreclosure judgment" Frank Lewis conveyed [sic] any interest he had in the Property to Diana Gordon Offord immediately after the trial court's judgment to avoid "liability" under the suit. Hence, a sheriff's sale of the property was not required as to Diana Gordon Offord since "[a] deed given in satisfaction of a debt may serve as a convenient, efficient transfer of title upon default of a debt. Hence, a sheriff's sale of the property was not required as to these parties since "[a] deed given in satisfaction of a debt may serve as a convenient, efficient transfer of title upon default of a debt.["]

Under a section titled "[The Gordons] HAVE AN OWNERSHIP INTEREST IN FEE SIMPLE IN TEN (10) OUT OF THE TWELVE (12) TRACTS OF THE KATIE LEWIS BURNLEY, FANNIE LEWIS, CHARITY LEWIS WILLIAMS, FRANK LEWIS[,] AND SIMON LEWIS ESTATES," the trial court's findings of fact provided:

> Since 1982 and over Twenty-five year[s] the [Gordons], without an adverse claim of right by another, held in peaceable and adverse possession the said property, cultivated, used, enjoyed, the said property openly and publicly. In addition the [Gordons], all through these periods paid property taxes, applied for and obtained Homestead Exemptions and/or Agricultural Exemption from the Fort Bend Central Appraisal District, acquired titled or ownership interest by will, and/or in lieu of property Tax foreclosure.

Contrary to the Gordons' argument, however, Diana did not testify, nor is there any evidence in the record, supporting the proposition that Frank executed a deed conveying his interest to Diana after a foreclosure suit. Additionally, there is no evidence or testimony that Diana received a deed or title to the Property through

any foreclosure sale; rather, Diana testified that no one has ever handed her a deed to the Property and that she did not receive a deed from the taxing authorities. Diana also testified that she asked the trial court in Lamar ISD's suit for past-due taxes to award her the Property if she paid the taxes, but the record shows that the trial court dismissed the suit for want of prosecution. Therefore, we conclude that the trial court erred when it found that Purple Martin lacked standing on this ground.

## C. INHERITANCE VIA WILL

As noted above, the trial court found that the Gordons acquired ownership to ten of the twelve lots in the Property by will. However, the evidence in the record indicates that Diana only inherited Charity's interest in the Property. Thus, we conclude that the trial court erred when it found that the Gordons inherited any interest in the Property originally belonging to Frank and Fannie and that Purple Martin lacked standing based on this ground.

## D. ADVERSE POSSESSION

The Gordons argued in their plea that they satisfied the statutory requirements for the adverse possession statute applicable to co-tenants. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.0265. However, § 16.0265 requires the party claiming adverse possession to file an affidavit in the deed records of the county in which the property is located, among other actions. *Id.* § 16.0265(c)(1), (d). The Gordons do not argue that they filed such an affidavit, and there is nothing in the record supporting a conclusion that the Gordons complied with this statutory requirement. Furthermore, the Gordons' adverse possession claim is a competing claim to the Property. We conclude that the trial court erred when it found that Purple Martin lacked standing as a result of the Gordons' competing claim to the Property through adverse possession. *See id.*; *see also Mohnke v. Greenwood*, 915

17

S.W.2d 585, 594 (Tex. App.—Houston [14th Dist.] 1996, no pet.) ("The question of adverse possession is one of fact, and only in rare instances can a court hold that adverse possession has been established as a matter of law.").

## E.    SUMMARY

Viewing the record and Purple Martin's deeds in the light most favorable to Purple Martin, we conclude that the trial court erred when it found that Purple Martin lacked standing to bring its claims. *See Miranda*, 133 S.W.3d at 226–28. We sustain Purple Martin's two issues.

## V.    CONCLUSION

We reverse the trial court's order dismissing Purple Martin's claims and its judgment awarding ten of the twelve lots in the Property to the Gordons. We remand for further proceedings consistent with this opinion.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.